### BRAHAN & ATWOOD v. RAGLAND, et al.

B. & A. signed as indorsers, under the name of T., whose name was there before, the paper being blank. It was afterwards filled as a note payable to B. & A., and the indorsements were filled, making them first indorsers, and T. as second. R., the holder, obtained judgment at law against each as indorsers. T. satisfied to R. the demand, and obtained a transfer of the judgment against B. & A., who then filed their bill for relief against it. T. shewed that although judgment had been rendered against him, his indorsement was in fact a forgery, and he claimed the amount. It was held:

1. That the judgment against T. was conclusive of T's. liability as between R. and him, but was not evidence as between him and B & A. They not being parties nor privies, but strangers.
2. That it was immaterial to B. & A., whether the signature of T. was genuine or not, they having no equity against him.
3. That the liability of B. & A. was as first indorsers.
4. That T. having satisfied the demand to R., was in equity entitled to collect it of B. & A.
5. That where one pays money, which another was equally bound to pay, and received an equal benefit, contribution will be allowed.
6. But that between accommodation indorsers, the liability is according to the order of the indorsements, and no right to contribution exists, either at law or in equity.
7. That where a judgment is assigned for valuable consideration, whether by parol or in writing, equity will sustain the assignment.
8. Semble, that a blank indorsement is an authority to fill a bill or note for such amount as the holder thinks proper.

THIS was a Chancery proceeding, in which five several bills were filed in Madison Circuit Court, by John Brahan and William Atwood, for the purpose of obtaining relief against a judgment which had been obtained against them at law in said Court by N. Ragland, at September term, 1821, for the sum of $1837 34, which was affirmed in the Supreme Court with $183 damages, with costs; and which was sought to be enforced against them for the use and benefit of Simon Turner, as was shewn by an indorsement of Ragland's attorney, made on the execution, dated the 28th June, 1825. This judgment had been obtained on a note in these words:

"$1616 84. Twenty days after date I promise to pay Brahan & Atwood, or order, sixteen hundred and sixteen dollars eighty four cents, payable and negotiable at the Planters and Merchants' Bank of Huntsville, for value received, this 2nd December, 1819.

H. C. BRADFORD."

Indorsed in the following manner.

"Pay the contents to Neil B. Rose, or order.

SIMON TURNER

Pay the contents to Simon Turner, or order.

BRAHAN & ATWOOD

Pay the contents to Nathaniel Ragland.

N. B. ROSE "

In April, 1823, Brahan filed the first bill against Ragland, Atwood, Turner and Rose, to obtain an injunction to restrain the collection of the judgment from him. He charged that Atwood had indorsed the note with the firm name of Brahan & Atwood; that Atwood and himself were copartners, but that he had no authority to sign the firm name, and that it was signed without the knowledge or consent of the complainant; that it was signed as security and for the accommodation merely of Bradford; and that the consideration moved directly from Ragland to Bradford. He charged that the note was presented to Atwood by Bradford, with a request that he should indorse it, the name of Simon Turner being already on the note, and that he put the name of Brahan & Atwood under that of Turner, all the indorsements being then in blank, and filled only by the attorneys at the trial. He avers that Ragland knew it was signed for the accommodation of Bradford; that it was notorious that Brahan & Atwood had ceased doing business as a firm, and that they were winding up. He charges that when the note fell due, he, Brahan, received no notice of non-payment; that no writ was served on him; that he knew nothing of it till after judgment, and that he is informed by Atwood, that he received no notice of demand and refusal to pay by the maker. He further states that he prosecuted a writ of error in hopes to reverse the judgment, but that it was affirmed by the Supreme Court. On this bill, an injunction was granted on the 16th of April, 1823.

In May, 1823, Ragland filed his answer to Brahan's bill. He responds that he knew nothing of the terms of the partnership between Brahan & Atwood, nor of the consideration passing between Bradford and them for the indorsement, nor that they had quit business, nor whether they received notice or not, nor of the order in which the indorsements stood; that the money was originally loaned by an agent of his, and several times renewed; that the name of Brahan & Atwood was on several of the renewed notes, but whether they were originally indorsers, or when they became so, he does not know. He insists that all those matters should have been pleaded to the action at law, and relies on the judgment in his favor. Turner also answered at the same time; he states that he knew nothing of the consideration for the indorsement, nor what authority the

partners had by the terms of their partnership. He insists that the note being made payable to Brahan & Atwood, they must of necessity be first indorsers; and that he never considered himself liable as first indorser.

At May term, 1825, the injunction was dissolved, and the bill dismissed as to Ragland, for want of equity; no proof was taken in the cause, and at June term, 1826, the bill was dismissed as to Turner and Atwood.

In September, 1825, Brahan & Atwood filed a new bill against Turner and Ragland, in which they charge many of the same facts alleged in the former bill; also that there had been several previous notes, of which the note sued on was a renewal; that on the note previous to this, Turner was first indorser, and frequently had been so, and that the complainants never were first indorsers; that when the paper was presented to Atwood for his signature, it was a blank, only the amount of the note was marked in figures at the left hand, and Simon Turner's name was indorsed on the back, in the position of a first indorser; that Atwood knew Turner to be good, and indorsed under Turner, intending his indorsement to be as second indorser, and delivered it to Bradford, who filled it up payable to Brahan & Atwood instead of Turner. That to the action at law, want of notice to charge them as indorsers, was relied on, but that the jury found against them, and the judgment was affirmed; that in the mean time, Ragland had obtained judgment against Turner, and satisfaction of the debt of him, and that this operated as a satisfaction of the judgment against them; that by an indorsement on the execution by Ragland's attorney, it appears that it is now issued for the benefit of Turner, and that Ragland has no further claim. They further charge that the debt contains an accumulation of excessive interest, for which, in equity, they being sureties, are not liable; that at the time Brahan filed his bill, he was ignorant of that fact, and that Bradford is insolvent. They insist that they are entitled to relief as against Ragland, for all over the real debt and legal interest; and against Turner for the whole, as he was first indorser, and should be charged as such. On this bill, a second injunction was granted, to restrain the collection of the judgment at law.

At June term, 1826, an order was made allowing the complainants to file a bill of review, &c.; whereupon, Brahan & Atwood exhibited an amended bill, and bill of review, against Ragland and Turner. In this bill they re-

32

JULY 1830.

Brahan & Atwood
v.
Ragland et al.

cite all the previous proceedings, and charge that they employed counsel to file their bill, and had no knowledge themselves that it was necessary to seek a review of the decree dismissing the original bill as to Ragland; that Atwood did not know in fact that the first bill was dismissed, but that the bill now sought to be amended was prepared by counsel without any consultation with Brahan, but on such information as Atwood could give, and under a belief that the original bill was still pending and could be dismissed without prejudice to the bill then filed; but that they are now advised, that as all the parties (except Atwood, on whom process was not served,) were before the Court, they should not have filed a second original bill, but should have proceeded by way of supplement or bill of review. They charge that the dismissal of the bill was erroneous, because, 1st. much of the judgment was for excessive interest, not known to them till after the dismissal as to Ragland; 2nd. that Turner had paid the debt to Ragland; and 3d. because Turner was in fact first indorser. For these errors they pray that the decrees of dismissal may be reviewed and corrected, &c.

In December, 1826, another bill was filed, entitled the bill of review of Brahan against Ragland and Turner, and the amended bill of Brahan & Atwood against the same. In this bill they recite all the previous proceedings, and pray that this bill may be considered in the nature of a bill of review, of amendment and of supplement, so that the whole controversy may be determined properly by one decree. To this bill, Ragland and Turner demurred, and moved to dissolve the injunction for want of equity in the bill, and at May term, 1827, the demurrer and motion were overruled by the Chancellor; in October, 1827, Turner filed his second answer.

Turner, in this answer, admits that he paid Ragland the amount of the judgment against him, and states, that at the time, it was agreed between Ragland and him, that the judgment against Brahan & Atwood should be collected in the name of Ragland for the use of Turner, and that he should have the control of it. He says he knows nothing of the consideration of the note or high interest, nor that any other notes were given before the one sued on, nor that it was signed in blank. He denies ever indorsing any of the notes, and denies his signature to the note sued on, and says he never knew of its existence till after its maturity; that it is not his act, and is not binding.

on him. He insists on the judgment at law, and that Brahan & Atwood are first indorsers. He also relies on the first decree made on Brahan's bill, and claims that the judgment at law should be enforced in his favor. On the coming in of this answer, the second injunction, on motion of Turner, was dissolved.

In March, 1828, another supplemental bill was filed by Brahan & Atwood, against Benjamin Patteson, A. F. Hopkins, Ragland, Turner, J. McKinley and Benjamin Hinchman. In this bill they allege that after the levy of the execution which issued after the dissolution of the first injunction, Atwood purchased the one half of the two bonds made by John Hart and Simon Turner, to John H. Eaton, one of which bonds was for $1459 61, payable the 1st of April, 1824, to John H. Eaton or order, the other for $1551 64, payable the 1st of April, 1825: both dated the 5th of April, 1822; that when he made this purchase, he had not been notified that Turner had transferred his interest in the judgment; that he bought these claims, believing they could be set off; that Hart had died insolvent, and that Turner was notoriously insolvent; and praying that his interest in the bonds might be set off against any claim Turner might have against them. They further set forth, that at the February term, 1828, of the County Court of Madison, a garnishment was sued out against them by J. H. Eaton, who had recovered in 1824, a judgment against Turner, amounting with interest to about $2000; that they appeared in Court and answered on a Saturday, neglecting to state that they themselves had an interest in the bonds aforesaid, then in their possession, not reflecting that it was material to protect their own interest; that after their answer was filed, and before judgment was pronounced on their answers, the matter was laid over till the next Monday; that on Monday they made a further answer to the garnishment, but that in the mean time Patteson and Hinchman filed a bill, setting forth that before the service of the garnishment on the complainants, Turner had transferred all his interest in the judgment obtained by Ragland to Patteson, who had transferred again a portion of it to Hinchman, and praying on their part an injunction to prevent Eaton from taking a judgment on his garnishment, and that on their bill, an injunction was granted against Eaton; and that a suit in Chancery then commenced against them by Patteson and Hinchman was then pending, to determine whether they, Patteson and Hinch-

man, and those claiming under them, shall have the benefit of the judgment; that on the second execution in favor of Ragland, there is an indorsement as follows: "The whole amount of this execution is to be paid to McKinley & Hopkins for the use of Benjamin M. Hinchman, and is not to be paid to any other person, 15th February, 1828, Simon Turner;" and that they are informed McKinley & Hopkins, by contract with Patteson, claimed one half of the execution. They pray that the proceeding may be stayed till it is ascertained who is properly entitled; that otherwise they may be compelled to pay twice, &c; that the defendants may be injoined and restrained from collecting so much as will be necessaay to satisfy the judgment of Eaton against Turner, until the bill filed by Hinchman and Patteson against Eaton shall be acted upon, and if decided in favor of Eaton, that the injunction for so much, and also for the one half of said judgment in favor of Ragland be rendered perpetual; that the injunction on the original bill be reinstated, &c. A transcript of the record of the garnishment was appended to this bill as an exhibit. On this bill the injunction was reinstated by a fiat made in vacation on the 15th of March, 1828.

Turner again answered this bill in May, 1828. He refers to his previous answer, and insists thereon; he answers further, that he sold to the defendant, Patteson, all his interest in the judgment at law, obtained by Ragland against the complainants in April, 1826, for about $1200, and received in payment thereof a debt, money and goods; that at his request, he made a written assignment of it to one Henry Stokes, and that since that time, he has had no further interest in the matter. He admits he made the transfer on the execution to McKinley & Hopkins, for the use of Hinchman; he admits that he signed the notes made by Hart, and as the security of Hart, and that Hart died insolvent; he also admits that he is himself insolvent; that Eaton had obtained judgment against him, and that this judgment is still unsatisfied. He says he knows nothing of the transactions by which Atwood acquired an interest in the notes made by Hart and himself.

Hinchman also answered the bill; he refers to, and relies upon, the answer of Turner; he says he knows nothing of the rights of Atwood to the half of the two bonds made by Hart and Turner. He insists that Atwood knew of the assignment made by Turner when he acquired this interest, if he acquired any, and controverts the rights

asserted by the complainants. He exhibits and sets up a
written assignment made by S. Turner, on the 10th of
April, 1826, by which he assigned the whole of the judg-
ment to Henry Stokes and his assigns. On this assign-
ment was indorsed a transfer, dated the 10th of September,
1826, by which Stokes assigned the judgment to Patteson
without recourse; and by a further indorsement made by
Patteson, dated the 12th September, 1826, he Patteson,
assigned $2600 of the judgment to him, the said B. M.
Hinchman, in trust for the use of Samuel Archer of Phil-
adelphia. He insists upon his rights under this assignment.

July 1830.

Brahan & At-
wood
v.
Ragland et al.

Patteson likewise filed his answer, relying upon the an-
swer of Turner, corroborating the answer of Hinchman,
and controverting the rights set up by the complainants,
and also Atwood's acquisition of the interest of one half
in the bonds signed by Hart and Turner. He insists that
Atwood had notice of the transfer made by Turner; he
admits the right set up by Hinchman, and admits that the
transfer on the execution was made with his consent to
Hinchman, on his agreeing to pay him the surplus after
his claim was satisfied. He admits he made a contract
with McKinley & Hopkins, in June, 1826, by which he
bound himself to pay them one half of the proceeds of the
judgment when collected, after deducting a fee of $100
due them, but denies that they acquired any control over
the judgment by that contract. The proceedings on the
garnishment at the suit of Eaton are admitted, and also
the pendency of the bill of Patteson and Hinchman against
Eaton, but he insists that Eaton can sustain no injury, be-
cause on obtaining an injunction against him, they gave
bond and security to indemnify him against all loss by the
improper exhibition of their bill.

The depositions of several witnesses were taken in the
case. Two witnesses, R. B. Purdon and D. Moore, ac-
quainted with the hand writing of Turner, deposed that
his signature indorsed on the note, was not in their opin-
ion genuine. One J. P. Neal, a witness, proved that
while Brahan & Atwood were copartners, Bradford brought
to Atwood a blank paper with about the sum of $1616 on
one corner, the name of Bradford signed below, and the
name of Simon Turner written on the back, and requested
Atwood to indorse it with the name of Brahan & Atwood,
who promised to do so, and he believed the note sued on
was the same paper. He did not recollect if Bradford
said any thing as to who was to be the payee. He also

JULY 1830.

Brahan & Atwood:
v.
Ragland et al.

states that he is acquainted with the hand writing of Turner, and on examination, he does not believe it to be genuine. A witness named Scruggs, proved that on the 12th of September, 1826, Hinchman received from Patteson the assignment of Turner's interest, and the several indorsements constituting the claim of Patteson and Hinchman; that the assignment of $2600 was made by Patteson to Hinchman, in part payment of a large debt due by Patteson for goods purchased of him. He also deposed that Atwood had notice of the transfer made by Turner; that Atwood then admitted he had no set off, but said. the debt was unjust, and that he never intended to pay it if he could avoid it; that this was in January, 1828. He further proved that it was agreed when the indorsement was made on the execution to Hinchman, that Hinchman should pay Patteson the surplus over and above the amount of his demand when satisfied; and that in February, 1828, Brahan saw this indorsement before he answered the garnishment of Eaton. Henry Stokes deposed that the judgment was transferred to him by Turner, at the request of Patteson and for Patteson's use; that he had no interest whatever in it, and that he indorsed it over to Patteson to whom it belonged, at his request. He further deposed that he signed the refunding bond, &c., &c. Simon Turner proved the transfer made to him by Ragland's attorney on the execution, and that it was made by the authority of Ragland; that on the 10th of April, 1826, he transferred it to Stokes as shewn in writing, at the request and for the use of Patteson, to whom he had sold it for about $1300, which he received of Patteson in a debt, goods and money. He also proved that he signed the assignment on the execution to Hinchman by the direction of Patteson. Some other depositions appear in the record, which it is believed not to be necessary here to notice.

The cause came on to be heard on the several bills, answers, exhibits and depositions, (the suit being discontinued as to Ragland,) at the spring term 1828, before Judge Taylor, who rendered a decree dismissing the several bills of the complainants, except so much of the last supplemental bill filed by them, as constitutes it a bill of interpleader between Patteson and others, and J. H. Eaton, and continued the injunction for $2000, and so much of the last bill as prayed an interpleader till a decree should be rendered between them, and ordering that the complainants should pay all costs, except the costs of the bill

of interpleader. Brahan & Atwood sued out their writ of error to reverse this decree, insisting that it was erroneous, and that they were entitled to the relief prayed for. After the issuance of this writ of error, at May term 1829, the remaining part of the cause was disposed of; the injunction was dissolved, and Patteson and Hinchman were allowed to have the benefit of the residue of their judgment at law; the complainants' bill was finally dismissed at their costs. It was agreed that this subsequent matter might be considered of in this Court, and that the assignment of error might embrace the whole cause.

The cause was argued at great length by HUTCHISON, for the appellants.

HOPKINS, argued for the appellees.

By JUDGE COLLIER. The appellants who had before been, and perhaps were at this time co-partners in trade, exhibited at different periods during the years 1823, '25, and 26, five bills on the equity side of the Circuit Court of Madison, all proposing to enjoin perpetually the collection of a judgment recovered by the appellee, Ragland, against them as first indorsers of a note of one Henry C. Bradford, upon the allegations that the note was indorsed for the accommodation of Bradford, and in violation of their mercantile association; that at the time the indorsement was made, the note was not drawn; the paper on which it was drawn was indorsed by Simon Turner, the appellee, and the figures indicating the amount were written on the left corner on the other side; that the consideration of the note was the loan of money by Ragland to Bradford, for which notes had been repeatedly renewed. On the renewed note last preceding, the name of Turner appeared as first indorser, though on some of the previous notes the appellants may have been first indorsers.

It further appears that Turner had paid to Ragland the amount of a judgment recovered against him on his indorsement, and that the collection was about to be coerced for Turner's benefit, as appeared by an indorsement by Ragland's attorney on the execution which had issued thereon.

Turner admits that he had paid Ragland with an agreement that he was to have the benefit of the judgment against the appellants, and to the third bill denies that he had in-

JULY 1830.

Brahan & At-
wood
v.
Ragland et al.

dorsed, or authorised the indorsement of any of the notes of Bradford to Ragland, which the proof established so far as it is incumbent on him to adduce it.

The points we propose to examine as arising out of these facts, or presented by the arguments of counsel, are

1st. Is Turner, as between the appellants and himself, to be considered an indorser of Bradford's note?

2nd. Is he liable to contribute jointly with the appellants to its payment?

3rd. Is he entitled to the benefit of Ragland's judgment against the appellants?

4th. Is the indorsement of the appellants good in favor of a *bona fide* holder for a valuable consideration?

1st. It is conceded that Turner's answer, so far as it denies the indorsement of Bradford's note, is fully sustained by proof. And the question recurs, whether he can be permitted to deny it after having suffered a judgment against him upon it in favor of Ragland, without interposing as a defence a denial of his signature.

The record of the recovery by Ragland against Turner would be admissible if material, for the purpose of shewing that a judgment was recovered. But when introduced by the appellants, they cannot claim the benefit of the legal consequences which result from it in favor of parties and privies; they are strangers, and it cannot according to the rules of evidence, make testimony for them. It is essential to the admissibility of judgments, that each party should be entitled to their benefit as proof, and they cannot be used against a stranger, so neither should they be used by them. The verdict may perhaps have been founded upon his testimony, when he had an interest in procuring it for the purposes of evidence; now as he cannot give evidence directly, he should not be permitted to do it circuitously. These views are sustained by Gilbert, an ancient law writer of celebrity, in his treatise on evidence,[a] and are adopted by more modern authors.[b] Again, judgments operate by way of estoppel, and all estoppels are founded on mutuality; for the want of this essential, the judgment against Turner is inadmissible.[c]

*a* Page 31.

*b* 1 Starkie 185.

*c* 4 Jh. & S. 479.

But let it be conceded that the judgment in favor of Ragland v. Turner is inadmissible, both for the purpose of shewing a recovery and the defence interposed, and we are then unprepared to yield an acquiescence to the conclusions which the appellants counsel have deduced from such premises. A denial in that suit by Turner of his indorse-

ment, could not have availed the appellants any thing,
even if such denial had prevented a recovery. The ap-
pellants would still have been liable to Ragland. And if
Turner had given notice to the appellants before action
brought, that his indorsement was a forgery, it would not
have afforded to them a valid defence. In moral justice
then, the appellants have no cause of complaint against
him.

It is granted that the recovery by Ragland against Tur-
ner is conclusive between the parties, for the reason that
it is evidenced by record. Against strangers, we think it
has been made manifest that it is no evidence.

Let us next inquire what influence the neglect of Tur-
ner to make known to the appellants the forgery of his
name can have upon their title to relief. The record dis-
closes no evidence of Turner ever having admitted his
signature to be genuine, or contributed his aid to Bradford
to impose upon the appellants. Perhaps he was in the
habit of lending his name to Bradford by indorsing blanks,
and he may not have acquired a knowledge that the in-
dorsement of his name was spurious, at an earlier period
than that at which he disclosed it in his answer. Be this
as it may, it does not appear that he ever adopted the in-
dorsement as his own, so far as the appellants are con-
cerned, and the only deduction to be made in their favor
from the inattention and neglect of Turner, is not a con-
clusion but a presumption of fact, that his signature is ge-
nuine; this presumption is met and explained away by
proof.

2nd, Though it was conceded as well by the counsel for
the appellants as the appellees, that authority was adverse
to contribution, we deem it fitting to examine the ques-
tion that the law may be ascertained and adjudged, Every
indorsement is equivalent to the drawing of a new bill;
the indorser undertakes with his indorsee, that if he will
use due diligence to obtain payment of the maker, and if
he fail, advise him thereof in a reasonable time thereafter,
then he, the indorser, will pay it. Every indorser is lia-
ble to those whose names appear on the paper after his,
if the proper steps have been taken to charge him, and
they are required to respond severally and not jointly to
the holder. This being the nature of an indorsement, and
the liability imposed by it, it is obvious that indorsers can-
not be viewed as sureties; the latter are liable at all events,
unless discharged by some *post factum* occurrence, while
33

JULY 1830.

Brahan & Atwood
v.
Ragland et al.

In *Hixon v. Reed.*[a] this question came before the Court of Appeals in Kentucky. In that case the first indorser paid the note at maturity, and brought his action to recover of the second indorser, one moiety of the money paid. The Court ruled that had the defendant paid the note, he would have been entitled to recover the amount from the plaintiff, and "in such cases, the first indorser should be considered as saying to the subsequent indorser, I will stand behind you for the whole;" and consequently contribution cannot be coerced in his favor. In *Brown v. Mott,*[b] it is held that a prior accommodation indorser is liable to a subsequent one, and in such cases "the indorser cannot set up that he indorsed the note without consideration, because by sending the note into circulation by a general indorsement, and making thereby a negotiable bill, a consideration is implied by the law merchant, and an inquiry into that fact is precluded."

In the *Farmers' Bank v. Vanmeter,*[c] it was adjudged that the doctrine of contribution did not apply as between accommodation indorsers, unless there was an express or implied agreement to bear parts of the loss as joint sureties, in the event of the inability of the drawer to pay. The learned Judge in pronouncing the opinion of the Court, remarks with great perspicuity of diction, "Sureties may bind themselves severally in succession, so that each may be a supplemental surety in respect to another. *Craythorne v. Swinbourne.*[d] In this case they have bound themselves by an instrument, the legal effect of which is to subject them in respect to each other in succession, in the order in which they indorsed, and they must be taken to be bound according to the legal effect of the instrument, until the contrary appears."

In *Campbell v. Mesier* and another,[e] the doctrine of contribution at common law, is considered somewhat at length. That was a suit in Chancery, brought for the recovery of a moiety of the money expended in the repairing of a party wall, which divided the premises of the complainant from those of the defendant. It appeared that the wall was in a dilapidated state, and that the enjoyment of their respective premises rendered its reparation necessary. The Chancellor remarked, that "the doctrine rests on the principle; that when the parties stand *in equali*

the former incur no engagement, and the liability of all or either, will depend upon the fact whether the proper steps have been taken to charge them.

a 2 Littell's Rep. 176.

b 7 John. 361.

c Randolph's Rep. 553.

d 14 Ves. 160.

e 4 John. Ch. Rep. 334.

*jure*, the law requires equality, which is equity, and one of them shall not be obliged to bear the burthen in case of the rest." Again, "contribution depends rather upon the principle of equity than upon contract. The obligation arises not from agreement, but from the nature of the relation, or *quasi ex contractu*, and as far as Courts of law have in modern times assumed jurisdiction, it is as Lord Eldon said,[a] upon the ground of an implied assumpsit.

The inference deducible from these authorities is, that when the parties have made a contract, which by its legal interpretation, does not place them *in equali jure*, but considers the undertaking of some of the promising parties as supplemental: neither law nor equity will expound the contract otherwise than according to its legal effect, unless the consent of the parties expressed or to be implied from circumstances authorizing the Courts to give a different exposition and operation; and will not therefore in such case compel contribution. But when one of two parties have expended money in the performance of that which was beneficial to another, and in which that other was bound to aid, as in the case of *Campbell v. Mesier* and another, equity will compel him who has borne no part of the expense, to contribute his proportion. Considered with these distinctions in view, the doctrine of contribution stands on solid and discernable ground.

3rd. Though the doctrine of cession as applicable to a subsequent indorser who has paid a judgment in favor of the holder, against a prior indorser, offers a very interesting inquiry, the view which we take of the case so far as it has been sought to be applied, does not make its examination material. It cannot be important to answer the question, whether by the silent operation of law, without the aid of a Court, Turner has been subrogated to the rights of Ragland. He declares in his answer that he paid Ragland, with an understanding that he was to have the benefit of his judgment against the appellants, and the testimony shews that Turner had received an assignment from the attorney of Ragland, to which assignment it does not appear that Ragland has ever objected. Nor does it appear whether the individual who made the assignment was the attorney at law or in fact; nor is it shewn that he transcended his authority; if he has, it forms no ground for relief in equity. The payment of the judgment to the officer authorized to coerce its payment by execution, would be a sufficient discharge for the appellants.

JULY 1830.

Brahan & Atwood
v.
Ragland et al.

a 14. Ves. 164.

It is too well settled upon authority to inquire now whether judgments are assignable in equity. Chancery will protect the assignment of a judgment in favor of one who has paid a valuable consideration for it, whether the assignment has been made by parol or in writing. The facts which appear on the record, it is believed bring Turner within the operation of this rule and entitle him to its benefit.

4th. It is a rule of the English law merchant, in the ascertainment of which, there is no variety of decision, that he who writes his name on a blank paper stamped for a bill or note, gives an implied authority to the holder of it, to fill it up with any amount that the stamp will warrant. In this country we have no stamps, so that the security which they afford in England, to him who writes his name upon a blank paper, with a view to be made the drawer, maker, or endorser of a bill or note, afterwards to be filled up, is lost here. Yet by analogy it would seem, that he continues liable without limitation as to amount in favor of a *bona fide* holder for a valuable consideration.

The appellants do not however complain that the note was filled up with a larger sum than they had authorized; in fact there were figures on the paper indicating its amount. But their complaint is that they are to be made first indorsers instead of Turner, who they believe was to have been such. Let us examine the grounds of their belief, and the benefit which would have resulted to them, had that belief been realised. Bradford did not inform them that Turner was to be the payee, and consequently the first indorser; and with neither Ragland or Turner did they have an interview. They concluded from the circumstance of Turner's name appearing on the paper when they lent theirs, that he was to be the first indorser, and from the further reason that he had first indorsed the last renewed note; and this conclusion was superinduced, though on some of the previous notes, they may have been first indorsers. If Turner had been made the payee of the note, the facts shew that it would have been void as to him, and that a recovery could not be coerced at law. Hence the appellants could have derived no advantage from the making and indorsement of the note agreeably to their expectation.

Let it be remarked that the liability of the appellants is founded rather upon the law merchant, than upon the principles of the common law proper, and that that law will

not entertain such a defence as the one set up against a mer-
cantile security, when in the hands of a *bona fide* holder
for a valuable consideration.    Usury and forgery are ac-
knowledged grounds of defence as against all persons, but
neither of these are pretended by the appellants to exist.
It is then obvious that Ragland is entitled to recover of
the appellants, unless he had contributed to their delusion,
and that Turner as his assignee, is entitled in equity to
have execution of the judgment.

The limited powers of Atwood, as the copartner of
Brahan, cannot render void his indorsement as to Brahan,
unless their limitation, or the fact that he lent the names
of the appellants without consideration was known to Rag-
land, in either of which instances Ragland would have
been chargeable with a fraud on Brahan, which is not
pretended.

Many other topics have been discussed by the counsel
in this cause, which we forbear to notice, either because
they are unimportant to a decision upon the merits, or are
not presented for an examination by the record.

The decree must be affirmed with costs; and such is the
opinion of JUDGES CRENSHAW, WHITE and myself.

By JUDGE SAFFOLD.   Being unable to concur in
the opinion of the majority of the Court, it will suffice to
express my views on the main feature of the controversy,
it being the one on which I dissent.   It is in relation to
the effect of the indorsement on the note in question, un-
der the circumstances attending its execution.

The material facts on this point from the several bills,
answers, exhibits and proofs appear to be, that previous
to December, 1819, Bradford by original applications and
the renewal of his debts, had procured several notes to be
discounted in Bank and otherwise, with Simon Turner, one
of the defendants, and these complainants as his securities
in the form of indorsers.   After much negotiation in this
way between Bradford and Ragland, with Turner, Rose
and these complainants as sureties or indorsers, and chiefly
or entirely for the accommodation of Bradford; a note
was executed for about $2500 by Bradford in favor of
Turner, having thereon indorsed the names of said Tur-
ner as first, these complainants second, and Rose third
indorser.   After the maturity of this note, the debt was
paid except the sum of $1616 84, which, and the interest
thereon, is the debt now in contest, but in a new and mo-
dified form.

JULY 1830.

Brahan & Atwood
v.
Ragland et al.

For the security of this residue, and to obtain further time upon it, a blank for a note was presented to Atwood, one of the complainants, for indorsement. It had at the time the amount ($1616 84) marked in figures on the left corner, and Turner's name written on the other side, in the usual and proper position of first indorser. On the presentation of the paper, and at the request of Bradford, Atwood signed the name of Brahan & Atwood, who were partners in trade, using this title below the name of Turner as second indorsers, and delivered it to Bradford. The latter of his own accord, for aught appearing to the contrary, filled up the face of the note, making it payable to the complainants, and delivered it to Ragland, who after having it in Bank for a time, put it in suit against the complainants, as first indorsers, his counsel having so filled the indorsement as to place the complainants in the attitude of first indorsers and Turner as second.

The complainants attempted defence to the suit against them in the Circuit Court, and being unsuccessful there, removed it into the Supreme Court, where perhaps on the principle that whether first or second indorsers, they were alike responsible to a subsequent indorser, the judgment was affirmed. During this litigation, suit was also brought against Turner as indorser, a recovery had, and the judgment satisfied by himself before the affirmance of the judgment against the complainants. Ragland, by attorney, after obtaining satisfaction out of Turner, sued out execution on the judgment against the complainants, and indorsed thereon that it was for Turner's benefit, on the ground that he was second, and complainants first indorsers.

With a view to relief in Chancery against the judgment and execution thus obtained, and pressed against the complainants, they filed several bills in the nature of original, supplemental and amended bills, and a bill of review, embracing in their claims to relief, various other matters which are unimportant to the consideration of the question of liability between the indorsers themselves. They however obtained an injunction of the judgment against them, by means of which, and this writ of error, the collection of the money from them remains suspended. Respecting the regularity of the complainants multiform proceedings in Chancery, it is only necessary to remark, that I cannot regard the original bill filed by Brahan alone, and the decree thereon, as a bar to relief subsequently sought by himself and partner; not only the parties, but the

grounds of relief are different, and what is more material, the main grievance, the indorsement on the execution, assigning the interest to Turner, and the pressure of it has subsequently arisen.  Turner, who seeks indemnity and remuneration as second indorser, by means of the assigned execution, does not appear at any time to have denied, but that the note in question, and several prior notes for similar objects, and having the names of these complainants as indorsers, contained also indorsements in his name. Nor does he appear in any form or manner to have denied the genuineness of his signatures to this or the preceding notes, until six or seven years after their execution. He remained profoundly silent for nearly the same lapse of time, after it was mutually known to him and the complainants, that the notes bore his signature, and that the latter were deeply interested in its genuineness and his responsibility; his silence was cautiously maintained until after Bradford had fled the country. Moreover, at an early period after the execution of the note, it having been drawn payable only twenty days after its date, when sued as indorser, he simply pleaded non-assumpsit, and suffered judgment to be rendered against him, without presuming to deny his indorsement. It is true the record evidence of this recovery is not in the transcript, but it was, as appears from the written opinion of the Circuit Court, offered as evidence there, and rejected as being matter *inter alios acta.* The complainants' bill however charges the recovery to have been suffered in the manner stated, and Turner's answer admits it in general terms. Therefore if the facts be material, and I think they are, they must be assumed as true, or a *certiorari* should issue to bring up the record as a part of the evidence. There is not the slightest evidence or even averment, that the complainants ever consented to become first indorsers to this note, or ever admitted themselves to be such. On the contrary, it manifestly appears that Atwood, who signed the name of the firm, believed at the time, that he was binding them as second indorsers only; and that this was a reasonable and natural conclusion, from seeing the name of Turner previously indorsed, and from the prior transactions of a similar nature, between the same parties, and to which Turner had made no objection.

It has not escaped me, that Turner, by his answer to the complainants' bill, denies generally that he knew any thing of the previous notes mentioned as having borne his sig-

nature as indorser, or that he ever indorsed them, or the one in contest, or that he authorized any one to indorse them for him, or that they were made with his knowledge or consent; or that he afterwards recognised them as valid indorsements. But it must be observed that this answer was filed in October, 1827, and is the first intimation we have of any denial from him of the genuineness of his signatures, when the note in controversy fell due in December, 1819, and the suit thereon against him was instituted shortly thereafter. In aid of Turner's answer, it is admitted that he had furnished sufficient other proof, that the indorsement on the note is not in his hand writing.

It is equally true, as an abstract proposition, that neither the appearance of a forged indorsement on the note, or any delusive expectations formed from the belief of its genuineness by another, at the time of giving his indorsement, can create any liability on the person whose name is thus indorsed, or affect the rights of a subsequent indorsee for a valuable consideration, and without notice of the fraud. Let it also be admitted that the judgment or verdict obtained by Ragland against Turner, is inadmissible as evidence in a suit between the latter and these complainants. Yet it by no means follows that any waiver by Turner of his defence against the indorsement, or any recognition either expressed or implied of his responsibility, whether in the defence of a suit against him or otherwise, does not bind him. Nor can I admit that the record shewing the nature of the suit against him and his plea, is not admissible evidence to shew his admission or recognition of his indorsement. Suppose instead of the plea of non-assumpsit, he had confessed judgment according to the note and indorsement, it would have been no less matter *inter alios acta,* yet doubtles the complainants would have been entitled to shew such admission of his liability as indorser, and that by the record. It fully appears from the complainants' bill and Turner's answer, and as it is understood by the record of the recovery against him by Ragland, that Turner in that suit declined availing himself of the only legal defence that could have been made, on the ground of the alleged forgery of his name, as either second or first indorser, and that then he had all the evidence of the fact, that he has had at any time since. If the indorsement was a forgery, and he had plenary evidence of the fact, his defence would have been no less available against Ragland than these complainants. And

as the responsibility of the latter, depended ultimately on
the validity of Turner's indorsement, together with the
solvency of Bradford, if the indorsement was spurious,
it was important that they should have had the earliest no-
tice of it, that they might have sought redress against
Bradford. Who can say that with such notice, they would
not have secured themselves? How is Turner's myste-
rious silence, relative to the alleged forgery to be ac-
counted for? Did he fear that a denial of his indorsement
at the proper time, or at any time during the seven years,
would elicit proof that he had lent the use of his name to
his friend, and that it had been so used to his prejudice?
Was he unwilling to deny his indorsement, lest it should
subject some one to the peril of forgery? Or did he seek
to favor the complainants decision, and promise himself
the gratification of suffering a recovery against himself,
that he might prosecute recourse against the complainants
who he knew, or had the best reasons to believe were only
accommodation indorsers? In any view of the subject,
it was an extraordinary and highly criminal silence. I
conceive the circumstances to amount to a full recognition
and adoption of his indorsement, sufficient to estop him in
relation to all persons, from a subsequent denial of the
indorsement.

Then I must regard Turner as an indorser; and admit-
ting that in equity, a subsequent indorsee for a valuable
consideration, who has made satisfaction to his indorser,
may have the benefit of cession of a judgment, obtained
by the latter against a prior indorser; admitting also that
the same may be done in the case of accommodation in-
dorsers, where there is no agreement, express or implied to
the contrary; yet I view this case as one essentially dif-
ferent from either. That these were accommodation in-
dorsers is sufficiently evident. All the circumstances con-
stituting Turner's admission, recognition or adoption of
his indorsement, apply equally to the peculiarities of the
case; to the note with his indorsement in the position of
first indorser, and doubtless with a knowledge that the in-
dorsement in his name had been first written. But Tur-
ner relies, among other things, on the fact that Bradford
filled up the note, which had remained blank, till after the
indorsement had been made, with the names of the com-
plainants, instead of himself, as payee; whereby it became
necessary, to secure the benefit of both indorsements, that
they should be filled up as though the first had been made

34

JULY 1830.

Brahan & Attwood
v.
Ragland et al.

*a* Page 174.
*b* Page 562.

*c* 14 Vesey 160,

*d* 4 John. Ch. Rep. 334.

from them to him, and that Ragland's attorney acted accordingly. From these circumstances it cannot be inferred that the complainants ever consented to incur a separate liability as between the indorsers, or to be made first indorser. The exact reverse of these facts is fully shewn to be the situation of the parties. The light most favorable to Turner, in which I think the subject can be viewed, is to regard him and the complainants as having strongly implied their consent to stand as co-sureties for Bradford, and that as between them the principle of contribution applies. I admit the true doctrine to be as held in 2 Littell*a* and 4 Randolph,*b* that in ordinary cases of indorsers, even for accommodation, where nothing is expressed or implied to the contrary, there is no right of contribution. That in signing as indorsers, they are presumed to know the law governing commercial transactions, and to have embarked their respective liabilities, subject only to the common law responsibility in relation to indorsers, and which is so far different from that of co-sureties, that the former are held "to have only bound themselves severally in succession, so that each may be a supplemental surety in respect to another." In support of this doctrine, the Supreme Court of Virginia and New York, and most of the American tribunals which have adopted it, refer for authority to the case of *Craythorne v. Swinburne.c* All the authorities however concur in the admission, that if from the particular circumstances of the transaction, an agreement among the indorsers can be inferred, that each should bear a part of the loss if any, as joint sureties, then they are to be regarded as such, and contribution must be allowed, at least in equity. The case referred to of *Craythorne v. Swinburne,* which has been often treated as a leading one, strongly inculcates this doctrine, and maintains that the intrinsic equity of the case, as between the indorsers should ever be regarded. The facts of that case could not involve much difficulty, yet the Chancellor went at length into the doctrine of liability between co-sureties, and of contribution, and I think admitted the principle for which I contend, and which would award contribution in a case like the present.

He admitted the position that "equality is equity in respect to sureties." In the case of *Campbell v. Mesier & Demstan,d* it is ruled that the doctrine of contribution is not so much founded on contract as on the principles of equity and justice. That where the interest is common,

the burden also should be common, and that this principle, that equality of right requires equality of burden, has a more extensive and effectual operation in a court of equity than in a court of law.

Hence I am of opinion, the decree should award contribution between Turner and the complainants.

*Decree affirmed.*

JUDGE TAYLOR, not sitting.