PYKE *vs* SEARCY et al.

*As to copartnership liability.*
*The competency of one co-partner to testify in a suit against the firm.*
*As to the subjection of funds in the hands of distributees to the payment of the debts of an estate.*
*Agreements with a principal, which discharge sureties.*

1. Where A and B, being copartners, received consignment of goods from C, up to the period of a dissolution of the firm; and A having died, B became the administrator, and C continued his consignments to B, in the firm name, and subsequently obtained a judgment at law against B, as surviving co-partner, on a bill filed by C, to compel payment of such judgment from B, the sureties to his bond, and the distributees of A's estate, to whom their shares had regularly passed, it was held,

First—That the firm, under the facts, was not to be charged, in Chancery, with accounts raised in the firm name, after notice of the dissolution, on the agency alone of B.

Secondly—That B's interest, under the circumstances being balanced, he was a competent witness in the cause.

2. Chancery will not lend its aid to enforce the payment of debts due from an estate, out of such portion thereof as has regularly passed into the hands of heirs and distributees, where the representative has committed a devastavit, until the ordinary legal remedies have been employed unsuccessfully, against the representative and his sureties.

3. An agreement by one holding claims against an estate, on account of the debt of a firm (the survivor of which is the administrator,)—to arbitrate the claim, which is done, and the award made the judgment of the Court, whereby day is given the survivor,—will operate a *discharge* of the administration sureties, and of the distributees, from all original liablity of the intestate, in respect to the claim.

In error, on a decree of the Circuit Court of Madison, exercising Chancery jurisdiction.

The bill in this case, was filed by Samuel Pyke against Jesse Searcy, and Mary his wife, George Fearn, and Elizabeth his wife, John C. Burruss, heirs of Charles Burruss, deceased, Jesse Searcy, administrator of Charles Burruss, deceased, and Thomas Fearn and Henry Cook. It set forth, that during the year eighteen hundred and twenty, orator being a manufacturer of rope, bagging, yarns, &c., and a dealer generally in produce in the State of Kentucky,—consigned for sale, to Charles Burruss and Jesse Searcy, then being copartners as commission merchants, sundry articles of the produce of Kentucky, until the early part of the year eighteen hundred and twenty-two,—f r which he exhibited receipts, signed in the name of the firm : that Searcy was the acting member of the firm ; and that in January, eighteen hundred and twenty-two, Burruss died, leaving the heirs, made parties to the bill : that shortly after his decease, Searcy duly became the administrator of the estate : that after Burruss' death, orator having applied to Searcy for a settlement of the accounts, raised by the aforesaid consignments, and finding such settlement impracticable, sued out a writ to January term, eighteen hundred and twenty-three, of Madison County Court, against the said Searcy, as *surviving partner* of the firm of Burruss & Searcy: that pending the litigation of this suit, an agreement was entered into between orator and Searcy, as surviving partner, and as the administrator of Burruss' estate, by which the subject of the suit was submitted to arbitration, and

a judgment entered in the Court thereon upon an award, whereby the sum of four thousand four hundred and thirty-eight dollars and forty-five cents, was recovered against the said Searcy, as surviving partner of the firm of Burruss & Searcy, and as the administrator of said Burruss,—payable in three annual instalments, with interest from the date of the award.

Orator further charged, that upon the first of these instalments, execution issued, upon which the money was made; but that the subsequent instalments could not be collected, by reason of the entire insolvency of the said Searcy; that a large amount of real and personal estate had gone into the possession of Searcy as the administrator of Burruss; a portion of which had been sold and distributed among the heirs, defendants to the bill: the bill therefore prayed relief, by the subjection, to the payment of the aforesaid judgment, of the funds of said estate, *in* the hands of Searcy, and the aforesaid distributees. The answer of Searcy admitted the copartnership, the death of Burruss, and the receipt of bagging, rope, &c., as charged in complainant's bill, but made many explanations, not relevant to the principle of the decision, and therefore not specified.

Thomas Fearn, George Fearn, and Elizabeth his wife, John C. Burruss, by guardian, and Henry Cook, all answered, setting forth allegations not material to be stated.

At April term, eighteen hundred and thirty-four, the cause having been set for hearing, the Chancellor directed the trial of an issue as to the administration, the copartnership, &c., which was tried accord-

ingly, and the fact established, that Burruss and Searcy were copartners until November, eighteen hundred and twenty, and that Burruss was liable on that copartnership until the nineteenth of November, eighteen hundred and twenty, and not after.

*Evidence.*

Ruffin Colman testified, that he commenced business, as a clerk for Burruss & Searcy in eighteen hundred and seventeen, and so continued until the fall of eighteen hundred and twenty : that in March, eighteen hundred and twenty-one, the connection between Burruss & Searcy closed, and Burruss ceased to take part in the transactions of the subsequent affairs : that after Burruss' death, witness had a conversation with Pyke, in which the latter complained of Searcy—asked if good for his debts, but appeared to lay no claim to an account with Burruss.

Daniel B. Turner testified, that in August, or September, eighteen hundred and twenty, he informed Pyke, that Burruss & Searcy had dissolved copartnership, and retired from business : that Pyke, after this period, however, continued to forward goods to Searcy, sometimes in the name of Searcy & Co., and occasionally in the name of Burruss & Searcy.

Jesse Searcy, the defendant, was also examined as a witness, against the will of the complainant, and explained the situation of accounts, between the parties. He testified to the fact, that some of the proceeds of the bagging, rope, &c., consigned to him, had gone to pay off the debts of Burruss, his intestate; but insisted that it was done, in consequence

of consignments of cotton, the property of the late firm, to the complainant.

Upon a final hearing, the bill was dismissed : and the complainant took a writ of error:

*Silas Parsons,* for plaintiff in error:
*Ormond* and *McClung,* contra.

COLLIER, J.—This cause is brought here from the equity side of the Circuit Court of Madison.

From the exhibits and proof, it appears, that from eighteen hundred and sixteen, up to the fall of eighteen hundred and twenty, the defendant, Jesse Searcy, and his intestate, Charles Burruss, were engaged in the mercantile business in Huntsville. At the latter period, the concern was dissolved, and intelligence of that fact communicated to the plaintiff, in the spring of eighteen hundred and twenty-one, by one who had been their clerk. In the fall of eighteen hundred and twenty, the plaintiff made consignments of bagging, rope, &c., to the firm of Burruss & Searcy, and continued to send J. Searcy & Co., and J. Searcy, manufactures and produce of Kentucky, up to eighteen hundred and twenty-two, to be sold upon his account, and for his benefit.

At the close of these transactions, between the plaintiff and Jesse Searcy, the plaintiff exhibited his account against Burruss & Searcy, in which he claimed a balance of several thousand dollars. After some fruitless efforts at an adjustment, the plaintiff brought an action at law against Searcy, as surviving partner of Burruss, and after much time spent in litigation, without obtaining a judgment, it was

agreed between the plaintiff and Jesse Searcy, as surviving partner, and as administrator of Charles Burruss, to submit their matters of difference to the arbitrament of persons chosen by them—the plaintiff at the same time stipulating with Searcy, that whatever sum might be found due him, should be paid in one, two, and three years. The arbitrators awarded, that the sum of ——— was due the plaintiff, and their award was made the judgment of the Court, as well against Searcy as surviving partner, as administrator of Burruss. The first instalment was paid on execution. On a *fi. fa.* for the collection of the second instalment, the sheriff returned *nulla bona.* The plaintiff thereupon exhibited his bill against Searcy, his sureties in the administration bond, and the distributees of the estate of Burruss, for the purpose of obtaining the benefit of his judgment, either against Searcy's sureties, or by subjecting the estate of Burruss, which had regularly passed to his distributees.

It very fully appears, that the estate of Burruss, in the hands of his administrator, was sufficient to pay all his debts, and that the administrator has been guilty of a *devastavit.*

Waiving the question of jurisdiction, and the consideration of the exceptions taken on the trial of an issue at law, directed, in this cause, to ascertain whether the demand of the plaintiff was chargeable upon the firm of Burruss & Searcy, and when that concern was dissolved—we will enquire,

First—Is there enough appearing from the answers, exhibits, and proofs, to shew, that the estate

4P                8

of Burruss was never liable to the payment of the plaintiff's claim?

Second—Can the estate of Burruss, in the hands of the distributees, be chargeable, so long as the sureties are solvent? And,

Third—Are not the sureties discharged by the act of the plaintiff, in varying his contract with Searcy, by giving him a longer day for payment? And if they be discharged, can the distributees be charged?

1. The merchants of Huntsville, it is said, during the years eighteen hundred and twenty and eighteen hundred and twenty-one, were in the habit of receiving for sale, on commission, bagging, rope, &c., and other manufactures and produce of Kentucky. Whether the usage was general, or extended to the entire mercantile community of the place, it does not appear; nor do we deem it material, in view of the facts of this cause, to enquire, whether it was such as to determine the liability of partnership associations, where the commission business was carried on through the agency of one partner alone, without the privity of his copartners.

The deposition of D. B. Turner shews, that the plaintiff was advised, in the spring of eighteen hundred and twenty-one, that Burruss & Searcy had ceased to do business.

The deposition of Ruffin Colman, proves, that in eighteen hundred and twenty-two, the plaintiff looked to Searcy for payment, and seemed gratified to learn, that he would receive from the estate of Burruss, (who had died a short time previously,) ample means to enable him to meet the demands.

The deposition of Searcy himself, proves, that he had paid to the plaintiff all the liabilities of himself, or of Burruss & Searcy, accruing anterior to the period when Turner gave him notice of the dissolution: in addition, this fact appears by the receipts of the plaintiff himself.

The manner of taking Searcy's deposition is waived—reserving the question of his competency as a witness.

It must be immaterial to Searcy, so far as pecuniary interest is concerned, how this cause may eventuate: if the plaintiff succeeds, he is liable to his sureties, or the distributees of Burruss: if the plaintiff fails, he is still obliged to pay his judgment. His interest, then, is balanced, and according to well established rule, his evidence is admissible.

Conceding the question that Burruss & Searcy, up to the spring of eighteen hundred and twenty-one, were jointly liable to make good to the plaintiff all consignments made previous to that time, they surely can not be charged for any after transactions; for then, even as to the plaintiff, who had been a previous dealer with the concern, there was the proper notice through Turner, the clerk, that they had ceased to do business together.

2. In respect to the second question—

In the case of *Darrington, et al.* vs *Borland,*[*] at the last term, this Court determined, that where an administor had wasted the estate of his intestate, and was himself insolvent, if the sureties in the bond, given for the faithful discharge of the duties of his office, were able to respond, all legal remedies should be exhausted against them, before a party

[*] 3 Porter's R. 9.

could be permitted to come into a Court of Equity, to subject the estate which had passed into the hands of the heirs and distributees. The sureties stipulate, not only that the administrator shall pay the debts, but that he shall not mismanage the estate to the prejudice of those entitled to its enjoyment; and this stipulation, from its nature, inures to all those who are beneficially interested. It thence necessarily follows, that the liability of the administrator is primary; and that when, by his misconduct, he lessens his ability to discharge it, his sureties, who have stipulated for his faithfulness, may then be resorted to : and when against all these, the ordinary remedies have been employed, unsuccessfully, *Chancery may then* be appealed to, to compel the heirs and distributees to contribute of the estate they have respectively received, to the payment of the debts. But not sooner will that Court lend its aid, unless it can be shewn that a legal remedy would be unavailing. It is not pretended, in this case, that the administrator has not wasted the estate of his intestate, or that his sureties are insolvent—but it appears very satisfactorily, from the proofs and admissions in the cause, that the administrator has wasted largely of the estate entrusted to his management, and that his sureties are amply able to repair the loss. If the principles adjudged by this Court, in the case referred to be law, and with them we are entirely satisfied, then there can be no decree against the heirs and distributees.

3. The sureties in an administration bond, as we have seen, undertake for the faithful performance of all the duties which are, or may be, required by law

of the administrator. The most important duties imposed upon the administrator, are the payment of the debts,—delivering over the property, and settling with the distributees; and the engagement of the sureties obliges them to see that this is done, or make good any injury which may result, if it is not done. The administrator must perform his duties in obedience to the law, as defined and established:—it is to this that the condition of the bond refers, and not to any rule which may be agreed between himself and a creditor, or one interested in the estate. If a rule of adjustment should be agreed on between the administrator and a creditor, variant from the law, and which would go to change the scope of the surety's undertaking, to his probable prejudice, the surety would not be bound to a compliance. It is well settled, that the surety is discharged, if the creditor, without his consent, agrees to give time to the principal debtor. Such is the doctrine of this Court, in *Comegys & Pershouse* vs *Cox & Harris*[*]—*Bibb* vs *Ellis*[†]—*Theobald on Principal and Surety*[‡]—*McLemore* vs *Powell, et al.*[§]

A mere gratuitous undertaking to procrastinate the day of payment, will not relieve the surety from liability; but an agreement to have that effect, must be founded upon an adequate consideration. Here, the plaintiff has agreed with Searcy, that in consideration he would submit the matters of difference between them, touching Searcy's individual liability, and his liability as administrator of Burruss—he (plaintiff,) would take a judgment, payable in one, two, and three years, for the sum awarded in his favor. Here, the rule of adjustment is variant from

[*] 1 Stewart, 262.
[†] 2 ib. 63.
[‡] 1 no. L. Lib. 127, et post.
[§] 12 Wheat. 554.

the law,—time has been given to the administrator upon a valid legal agreement, and in our judgment, the sureties are discharged.

The sureties being discharged by the voluntary act of the plaintiff, it results as a corollary, that the distributees are freed from any equitable obligation to contribute to the payment of the plaintiff's demand—their liability being primary, and intended as well for the benefit of the distributees as the creditors.

We have not felt ourselves called upon to give to this case a more elaborate consideration, as the material questions have been settled by this Court, in its adjudications referred to.

It remains but to say, the decree must be affirmed