## SAWYER'S ADM'R v. PATTERSON.

1. It is not necessary to fill up a blank indorsement by inserting the plaintiff's name, although the declaration describes him as an indorsee.

2. Where a note loses its assignable quality by a judgment having been recovered thereon against one of the makers, in the name of the assignee, the insertion of the name of another person in the indorsement of the payee which was previously blank, is a nugatory act, and the name thus

inserted may be stricken out at the trial of a suit brought by the assignee against another maker.

3. A *gratuitous* indulgence given by the plaintiff to the principal after the recovery of a judgment against him, will not discharge the surety.

4. The act of 1837, which inhibits the assignment of a promissory note by delivery merely, so as to permit the assignee to maintain an action thereon as the bearer, cannot be extended by construction to *blank indorsements,* or to an indorsement which directs the contents to be paid to the bearer, without indicating him by name.

5. Under a declaration which describes a note for the payment of a sum of money at an appointed day, it is not allowable to give in evidence, a note which conforms to the description in the declaration, and contains the additional stipulation to pay " interest from the date."

6. Where the defendant objects *severally,* to the admissibility of the note and its indorsement, on which the action is founded, if either the note or indorsement are inadmissible, the objection should not be overruled, because no cause is particularized; but where a general objection is made to written evidence, and the party objecting refuses to specify, or states one that is insufficient, then perhaps an appellate tribunal would not reverse the jndgment, though a valid objection might have been stated in the court below.

Writ of Error to the Circuit Court of Talladega.

THIS was an action of assumpsit at the suit of the defendant in error, as the assignee of a promissory note, made by the intestate and one Drury Sawyer, (who is not sued,) on the 25th April, 1838, for the payment of the sum of $800 to Robert C. Wilson on the 25th December, 1838. The cause was tried on the pleas of *non-assumpsit,* payment, and setoff. Upon the trial, the plaintiff excepted to the ruling of the court, and a bill of exceptions was sealed which presents the following points : 1. The plaintiff read to the jury the note, on which was an indorsement in these words : " Pay the bearer, Joseph H. Bradford. May 24th, 1838. R. C. Wilson." To the introduction of the note and indorsement, the defendant objected ; the plaintiff's attorney thereupon struck out the name of Bradford, and then proposed to read the note to the jury—having proved that he inserted it several years previously, for the purpose of using the note as evidence in a suit then brought thereon in favor of Bradford, as

indorsee.   The defendant again objected severally to the ad-
mission of the verbal evidence and the note and indorsement,
but his objection was overruled and the evidence allowed to
go to the jury.

2.  On the part of the defendant it was proved that on the
15th July, 1839, a judgment for $837 33, with $6 50 costs,
was rendered on the note declared on, in favor of plaintiff
against Drury Sawyer—there being an indorsement in blank
by R. C. Wilson, the payee.   A *fi. fa.* issued on that judg-
ment the 6th August, 1839, and was placed in the hands of
the sheriff of Talladega.   The intestate was then living, and
resided near the defendant in the execution.   A levy was
made on a town lot worth about $190, and Sawyer at the
same time had a stock of dry goods and groceries in the
county worth from $1000 to $1500; the *fi. fa.* mentioned
was the only one in the sheriff's hands against him.   On the
10th January, 1840, the sheriff made the following return :
" This *fi. fa.* is delayed by the plaintiff until further orders."
Shortly after the levy was made, Bradford informed the she-
riff that the defendant in execution had paid him $400 which
was to be credited thereon, and that he had promised the de-
fendant and wished the sheriff to delay or hold up the execu-
tion until further orders, but did not desire it so indorsed as
to lose his lien.   Under these instructions from Bradford, the
sheriff made the return stated above, and Bradford, who had
the right to control the execution, thus prevented the money
from being made thereon.   In addition to the $400, D. S.
paid B. $75 on the judgment.

Upon a judgment and execution of a subsequent date in
favor of another plaintiff, the property of D. Sawyer was sold
in the spring of 1840, in Talladega, for about $500.   In the
early part of 1840, D. Sawyer left this State wholly insol-
vent, and has not since returned—the intestate was his sure-
ty in the note, and in the latter part of 1839 owed him some-
thing, but how much, does not appear.

The note in question was indorsed by the payee to one
Yarborough, in blank, and this indorsement was afterwards
filled up.   Plaintiff was the holder of the note when the suit
was brought, which resulted in a judgment against Drury

Sawyer. Previous to the rendition of that judgment, the plaintiff transferred his right to the proceeds of the note to one Brown and J. H. Bradford.

The defendant prayed the court to charge the jury, that if they believed all the evidence adduced, they should find for the defendant; this prayer was denied, and the jury instructed, that if they believed all the evidence, the plaintiff was entitled to recover.

The defendant further prayed the court to charge, that if the note was indorsed specially, as had been proved, to Bradford, and the plaintiff had no interest therein at the commencement of this suit, then he was not entitled to recover. Another charge was prayed, in which the defendant condenses all the testimony, except that relating to the indorsement, and asks that the jury may be instructed, if they believe it all to be true, to find for the defendant. Both these charges were refused. A verdict was returned for plaintiff, and judgment was thereupon rendered.

S. F. RICE, for the plaintiff in error, cited 1 Johns. Rep. 143; 1 Ala. Rep. 468; 4 Id. 571; 6 Id. 461; Minor's Rep. 357; 3 Stewt. Rep. 271; 2 Port. Rep. 308; 9 Id. 306; Chit. on Bills, 100 to 107; Story on Prom. Notes, § 138, 139; 4 D. & E. Rep. 28; Doug. Rep. 611; 7 Mass. Rep. 480; 5 Wend. Rep. 307; Theob. on Prin. & S. 143; 2 Swanst. R. 185; 6 Blackf. Rep. 127.

W. P. CHILTON, for the defendant, cited 1 Marsh. R. 555; 4 Ala. Rep. 222–282; 6 Id. 572–532; 8 Id. 628–868–948; 9 Id. 198–586–847; 2 Port. Rep. 542; 8 Id. 307; 4 Pick. R. 307–385; 3 Mass. Rep. 274; 11 Mass. Rep. 288; 15 Id. 436; 1 Ala. Rep. 468; 2 Bail. Rep. 617; 8 Ala. Rep. 589.

COLLIER, C. J.—In Riggs v. Andrews & Co. 8 Ala. R. 628, it was held to be unnecessary to fill up a blank indorsement, even when the description in the declaration is, that the note was indorsed to the plaintiff. And in Potts v. Keyser, 1 Stewt. Rep. 154, it was decided that where the plaintiff produces a note payable to himself, he is presumed to be

Sawyer's Adm'r v. Patterson.

the owner of it, though it appears to have been indorsed by him to another person.

The cause in which Bradford recovered a judgment against the intestate, upon the note on which the present action is brought, was before this court at a previous term. [6 Ala. Rep. 572.] We there said "that after a judgment by Patterson as assignee of Wilson, the payee, against D. Sawyer, the principal, the note was assigned by Wilson to the defendant in error, who again put the note in suit against the plaintiff in error, the other party to the note not sued in the first action. In Brown v. Foster, 3 Ala. Rep. 284, we held that by the judgment in favor of the first assignee, the note had lost its negotiable quality, and could not be again transferred, so as to enable the transferee to sue in his own name." And thereupon the court reversed the judgment. These citations are quite sufficient to show that the note lost its assignable quality previous to the insertion of Bradford's name in the indorsement. Its insertion was a mere nugatory act, and striking it out did not in any manner affect the validity of the note, or the liability of the defendants to pay it. The legal title to the paper was in the plaintiff, and his striking out the name of Bradford, the written evidence, when coupled with the possession, indicated his right without inserting his own name. This conclusion is the necessary result of previous decisions, and requires no further argument to support it.

In Sawyer v. Bradford, *supra*, it was said, that "the direction to the sheriff to stay the execution was without consideration, and might have been countermanded at any time. It did not therefore interpose any obstacle to the payment of the debt by the surety, and when he could have proceeded against his principal." And in Caller v. Vivian, et al. 8 Ala. Rep. 903, we held that there was no obligation to active diligence on the part of a creditor in the collection of his debt— he may forbear the employment of coercive measures as long as he please, true, the discharge of a regular levy may be productive of injury to the surety, and so in most cases would be the dismissal of a suit, or the neglect to commence one, yet, unless the holder of a security by valid contract give day to the principal, the surety is not discharged. [See

also 4 Port. Rep. 61; 8 Id. 108; 8 Ala. Rep. 759.] These decisions show, that the mere gratuitous indulgence of D. Sawyer by the plaintiff, in directing the sheriff not to proceed on his execution, did not discharge the intestate from liability on the note.

The act of 1837, (Clay's Dig. 326, § 76,) which has been cited for the plaintiff in error, has no application to the case at bar. That enactment provides that all notes, bonds or bills payable to any person or bearer, or to bearer only, shall be sued in the name of the person only, to whom the same may be expressly made payable, and no one else but the payee or his indorsee or personal representative shall maintain an action thereon. The title of the act perhaps indicates its purpose, though its scope and operation may be still more extensive. But it is needless to say more on this point, as it is most obvious from the terms employed, that it does not extend to blank indorsements, or where the indorser directs the contents of assignable or negotiable paper to be paid to the bearer, without indicating him by name.

If the note itself was admissible under the declaration, what we have said will suffice to show that there is no error in the charge given or in those denied. The remaining question then to be considered is, whether the variance of the note offered in evidence from that described in the declaration, is such as required its exclusion. The declaration describes a note for $800, dated the 25th April, 1838, and payable on the 25th December next thereafter, while that set out in the bill of exceptions as having been laid before the jury is for the same amount, dated and payable at the same time "with interest from the date." This, in our judgment, is a clear variance. The effect of the note declared on, is to draw interest after its maturity, if the makers failed to pay it—but interest on the note produced will be calculated not merely as a consequence of default in its payment, but in virtue of the express contract from the day it purports to have been made.

It is however insisted for the defendant in error, that as it does not appear the variance was expressly pointed out in the objection to the admission of the note, it should not be noticed in this court. The bill of exceptions distinctly states

that the defendant objected severally to the admission of the note and indorsement. If the court did not perceive the objection to the note, or it was not particularized, it should not have been overruled *in limine*, as it was well taken. Where counsel make a general objection to the admission of written evidence, and refuse to specify it when required by the court, or state one that is insufficient, then perhaps an appellate court would not give to the party the benefit of it, although he might have shown such a discrepancy between the proof and allegation as should have induced the court to allow his objection.

For the error in the last point considered, the judgment is reversed and the cause remanded.