## RHODES v. SHERROD.

1. The agent of a corporation, who accepts bills drawn on him by a stockholder, for the accommodation of the corporation, is a competent witness against the drawer or indorsers, when sued on the bills, and also if the action is for money paid, &c., by one party to the bill against another.

2. Although bills are drawn and indorsed for the accommodation of a corporation, it is competent for one party, when sued for money paid, &c. to show by parol, that the agreement was to contribute jointly in case of loss; and this, although the names, as indorsed on the bills, indicate a different liability.

3. Although the evidence stated in the bill of exceptions may not seem to warrant the verdict, yet an appellate court will not reverse where no question was made to the jury, on the effect of the evidence.

4. When a charge is not full, upon the evidence before the jury, or is even ambiguous, this is no cause for reversal, when no instructions beyond those given are asked for.

5. The circumstance that a party to a bill, sued by another party to the same bill, stands upon it as the last indorser, is not conclusive that he is not liable to contribute otherwise, when there is evidence before the jury of a collateral agreement.

6. This Court will not reverse on the ground that too much damages are given, assuming the evidence stated in the bill of exceptions as furnishing the rule, when no specific instructions are asked to the jury on the measure of damages.

Writ of Error to the Circuit Court of Tuscaloosa county.

The suit is by Sherrod, against Rhodes, and the declaration contains counts on three bills of exchange, as well as the common counts. The bills are described as having the following parties, to wit: the first, Rhodes as drawer, A. S. Christian as first indorser, for $6,034 67. The second, drawn by A. S. Christian; James T. Sykes as first, and Rhodes as second indorser; for $6,034 66. The third, drawn by Jas. T. Sykes, with Rhodes as first indorser, for $6,034 67. All of these bills were likewise indorsed by Sherrod, and accepted by David Deshler, as treasurer of the Tuscumbia and Courtland Rail Road Company. At the trial, the bills were produced, and read to the jury, without exception.

The plaintiff then offered David Deshler as a witness, whereupon he was asked by the defendant, whether he was a stockholder in the Courtland and Tuscumbia Rail Road Company, and answering that he was, the defendant objected to his competency as a witness. The Court overruled the objection.

The witness stated he was, when the bills were accepted, and for a long time before had been, the treasurer of said company, and that he accepted them as treasurer, by direction of the board of directors. He also stated, that the company had been engaged in a system of financiering, for the purpose of raising funds, from the year 1833, and this was continued up to the date of the bills. The mode of doing this was, for members of the company to draw bills upon their treasurer, and let him accept them; these bills were indorsed by other members of the company, and when due, the treasurer, if he had funds of the company, appropriated them to their payment, and if he had none, he procured other bills to be made in the same way, to take up the old ones. The plaintiff's name was always on nearly all of the bills of the company, made as before described. In 1836, the plaintiff wished to withdraw his name from the paper of the company, but the directors would not consent for him to do so, as it would injure the credit of the company, and it was finally agreed, the plaintiff would indorse any paper which any of the directors might make in this way, if they would let him be the last indorser, inasmuch as he was very wealthy, and his name a weighty one. That the witness understood this was for Sherrod's protection. When the witness wanted bills made in this way, he usually called on any of the directors he first met to draw and indorse the bills, but as the plaintiff was to indorse all the paper, they were carried to him last. The bills in this case were made in the usual way, before stated, and were negotiated for the joint benefit of the company. It was the understanding, and there were resolutions of the company to that effect, that the parties on the bills were not to pay them, but they were to be paid by the company. The bills in this case were not paid by the company, but by the plaintiff, with the exception of the credits indorsed on one of them.

Another witness was introduced on behalf of the defendant, who testified substantially to the same facts as Deshler. Also, that he had been on some of the same kind of paper, when he was a director. He did not suppose the directors were lawyers enough to know what was meant by contribution, but he supposed they were liable as they stood on the bills. In 1836, the affairs of the company were becoming critical. The plaintiff never afterwards, so far as the witness knew, indorsed any paper, except as second or third indorser. The plaintiff told the witness that he held the bills sued against Rhodes.

The defendant objected to the testimony of Deshler, because it conflicted with the statute of frauds, and could not be proved by parol, there being no note, or memorandum in writing, of an agreement to contribute as co-sureties, and that the contract of indorsement could not be altered by parol. This objection was overruled.

The plaintiff, in the opening of the case, stated that he did not seek to charge the defendant on the bills, but only on the money counts; that no such notice had been given of the dishonor of the bills, as was essential to charge the defendant as drawer or indorser.

It was proved that the plaintiff and defendant were the only persons on the bills who were not insolvent.

The court charged the jury as follows:

1. After explaining the character of the bills, the liability of all the parties, the order of that liability—that after the acceptor and drawer, the first indorser was liable—about which there was no difference of opinion between the parties concerned, the court then proceeded to charge the jury, that the liability of the parties in this case, was the same as in all other cases of bills of exchange, and they would be liable in the same manner, unless the jury was satisfied, from the testimony, that in this case there was an agreement, or facts and circumstances from which an agreement could be reasonably inferred, that the parties were to be mutually liable.

2. That in the absence of such an agreement, the plaintiff could not recover.

The defendant asked the Court to instruct the jury, that

9

the fact of the plaintiff being the last indorser, was conclusive against any inference of such an agreement. The court refused to give this charge, in the language asked, but charged the jury, that the fact was not conclusive of the non-existence of such an agreement, yet it was a circumstance to which they might give whatever weight they thought proper, in coming to a conclusion as to the existence or non-existence of such a contract or agreement. The defendant excepted to the several rulings of the court against him, and here assigns the same as error.

Hopkins, Huntington and W. Cochran, for the plaintiff in error, made the following points :

1. Deshler was incompetent to prove any matter that could change the legal effect of the contract of drawing, indorsing, or accepting the bills. As the acceptor, he is liable to all the other parties, yet he was permitted to prove that he was not liable, and that he accepted the bills by order of the directors. The effect of this is, that he discharged himself from the party who paid the bills, and leaves him liable as one of four sureties.

2. His evidence has no tendency whatever, to establish an agreement between the drawers and indorsers of the bills for contribution. The only understanding was, that the company should pay the bills. The contract implied from his testimony, is between the parties to the bills and the Rail Road Company, and does not touch any matter between the parties. If, however, the *directors* were liable to contribute, it is not shown that Rhodes was one, and as a *member* of the company, he would not be liable, except in a court of equity.

3. But if Deshler was a competent witness, his testimony cannot vary the contract, as shown upon the bills, between the parties. [Minor, 251, 357 ; 4 En. C. L 31 ; 22 Ib. 313 ; 2 B. & P. 565 ; 3 Stewart, 271 ; 2 Ala. Rep. 283 ; 11 Mass. 27 ; 2 Wm. Black. 1249.]

4. The charge to the jury is indecisive and contradictory. It assumes, against the admission of the plaintiff, that the parties to these bills were liable, in the same manner as parties to all other bills, unless an agreement for contribution be-

tween them could be inferred. This would leave Rhodes liable, for there was no evidence of such an agreement. The subsequent charge, that without such an agreement he would not be liable, contradicted the first charge, and was well calculated to mislead the jury, for that reason. A charge which may mislead a jury, is a good ground for reversing a judgment. [1 Ala. Rep. 423 ; 2 Ib. 359; 5 Ib. 692.]

5. The charge also assumes, that the parties to the suit were liable on the bills, unless an agreement was proved, that the parties were to be mutually liable. Now if the evidence tended to show any agreement, all the parties *to the bills* were, and not Sherrod and Rhodes to each other, mutually. This agreement, conceding it to have been shown, would make Rhodes liable for one fourth only, and the verdict is for one half of the bills. No charge was given as to the operation of the insolvency of the two other parties to the bills, nor was it brought to the notice of the jury, except by the proof.

6. When the court undertook to instruct the jury as to the law of the case, it ought to have instructed what was the legal effect of the evidence before the jury. No agreement for contribution was proved, nor any facts or circumstances from which such an agreement could be inferred. Under the facts in evidence, Sherrod was entitled to recover nothing from Rhodes, as he was neither liable for contribution as a director, or as a stockholder. [3 Porter, 474.] And the court should so have instructed the jury.

7. The charge asked for by the defendant, should have been given, as, in the absence of proof of an agreement, or of facts and circumstances from which one could be inferred, the indorsement of Sherrod, subsequent to Rhodes, was conclusive of the liability. To remove the effect of this relation of the parties, there should have been some evidence tending to show a contrary agreement. There was none ; but on the contrary, the understanding spoken of by Deshler, shows that Sherrod assumed the position of last indorser to protect himself.

8. In the charge substituted for the one requested, the court left the effect of this fact to the jury, to give such weight as they thought proper. Every particle of evidence has, or is presumed to have, some legal effect, and it is the

duty of the court to charge what it is. Here, if this circumstance was not conclusive, it certainly was of a controlling character, when taken in connection with the other evidence, and if its effect had been explained, the result would probably have been different. No one can come to the conclusion, that the jury was not misled, and therefore the judgment should be reversed. [1 Ala. Rep. 423; 2 Ib. 359; 5 Ib. 693.]

9. If an agreement for contribution was established, as between the parties to the bills, Rhodes would be liable at law, in this form of action, for one fourth of the amount. The statute which provides a different rule, when the proceeding is by *motion*, does so only when a suit is pending against the surety, who makes the motion, and is for his relief against that suit. [Clay's Dig. 533, § 12.] It does not reach the case of a voluntary payment, and applies only when the adverse suit is pending.

PECK and L. CLARK, contra, insisted that all the questions raised here, are covered by the opinion delivered when the cause was here before, [5 Ala. Rep. 683,] so far as the merits of the case are concerned. As to the charge, there is no uncertainty or evasiveness, and whether the evidence was sufficient to make out the agreement for contribution, that was a question for the jury, and no instructions were asked as to the effect of the testimony.

GOLDTHWAITE, J.—1. The competency of Mr. Deshler as a witness, is the same, whether he or the Rail Road Company is considered as the acceptor of the bills of exchange, as the general rule, when the action is directly upon the bill or note, is, that the acceptor or maker is a competent witness for or against any other party. [Cowan & Hill's Notes, 132; Griffing v. Harris, 9 Porter, 225.] And it seems to follow, that he is so when the suit is a collateral one. One exception is, when the acceptor or maker will be responsible, as well for the costs of the suit in which he is called as a witness, as for the amount of the note or bill; this interest will disqualify him from giving evidence in favor of the party to whom he is thus responsible. [Commercial Bank v.

Rhodes v. Sherrod.

Whitehead, 4 Ala. Rep. 637.]  Here, if Deshler is the acceptor, it cannot be said that he is so for the accommodation of the other parties, nor would the verdict in this suit be evidence for or against him, when sued upon the bills.  We think the objection to his competency was properly overruled.

2. It is also urged, that the contract imported by the drawing and indorsing of the bills, is not susceptible of modification or explanation, so as to let in parol evidence, to show an agreement between the parties, to contribute equally in case the bills were not paid by the company.  If this proposition is correct, it will be difficult to account for the use of the term accommodation acceptor, or indorser, as applied to different parties on the same bill.  In the English courts, if the accommodated person sues his accommodation indorser, or acceptor, the defence is put on the ground of a failure of consideration, and the party cannot recover, though a third person giving value for the bill or note, previous to its maturity may.  [Chitty on Bills, 79 to 82.]  In this view, the question as to the admissibility of parol evidence, to explain the writing, does not arise, as the matter of consideration is always open to evidence, notwithstanding the character of the instrument, or the insertion of the usual words of value received.  [Cowan & Hill's Notes, 1458, and cases there cited.]  If then, the suit was directly upon the bills, it would be proper for the defendant to show, that as between the plaintiff and himself the contract was supported by no sufficient consideration, or by one only reaching to a part of the sum sued for, and the plaintiff could only recover the sum actually advanced for the defendant.  [Chitty on Bills, 81, and cases there cited.]  If the defendant could thus have the benefit of the agreement, which, as between him and the plaintiff, attaches itself to the consideration of the bills, there is no reason why the plaintiff, when suing on the money counts, should not have the same benefit.  Indeed, all these questions, as between sureties, are entirely independent of the form of the instrument, and irrespective of the manner in which the names appear; and the true relation between the parties may be shown by parol evidence.  [Cowan & Hill's Notes, 1466, and cases there cited.]

It is supposed by the counsel for the plaintiff in error, that the position assumed by them is sustained by the recent decision of Tankersley v. Graham, (8 Alabama Rep. 247.) There, however, the attempt was to show that the contract implied by the blank indorsement of a note was secured by a parol understanding, by which a different liability would have been created. It was, in effect, precisely the same principle as held in Free v. Hawkins, [8 Taunt. 92,] cited by the plaintiffs; but the distinction between those cases and this, is, that in them, the attempt was to modify the contract, while here, it is to shew, as between these parties, the drawing and indorsing, was invalid for the want of any consideration, and the recovery is sought, on a distinct and different contract for contribution. It is scarcely necessary to add, that our conclusion on this point is, that the effort to prove a contract to contribute rateably, is not obnoxious to the objection, that parol evidence was let in to explain or modify a written contract.

3. On the next position assumed, if it was material to consider the case in that aspect, it may be that we should concur with the counsel, that there is nothing in the evidence set out in the bill of exceptions, showing, or even tending to show an agreement, between these parties, or between the parties to these bills, or to those which previously had been drawn in a similar course of business, that all should contribute alike in case of a loss : but there was no question made to the Court below, as to the effect of the evidence ; or if a question was so made, it does not appear from the bill of exceptions. We cannot say that the cause was not put properly to the jury upon the evidence, because it is certain there was other testimony than is set out. The statement in the bill is "this was all the evidence deemed necessary to be stated." Why was no more deemed necessary, unless that which was stated was considered as sufficient to show the error in the points excepted to ? It would be unreasonable, as well as unwarranted, to set aside the verdict, not because there was error in the charge, or refusal to charge, but because we deem the evidence insufficient, when we have no means to know what it was, or how it controlled the case ; and that too, after the

Circuit Court had refused a motion for a new trial, based on the ground that the verdict was against the evidence.

4. Most of the other positions assail the charge as being indecisive, contradictory, and calculated to mislead the jury. When a charge is argumentative and evasive, this furnishes a ground of reversal, if it is also calculated to mislead the jury. [Cochran v. Moore, 1 Ala. Rep. 424; Smith v. Thompson, 2 S. & R. 49; Powers v. McFarrer, ib. 44;] but if it is merely ambiguous, and on that ground liable to mislead, it is the duty of the party, at the time, to require the necessary explanation; and if he omits to do so, it is no cause for reversal. [Cowen & Hill's Notes, 794; per Patterson, J., in Taylor v. Williams, 2 B. & Adolp. 845; Carver v. Jackson, 4 Peters', 81.]

In Toulmin v. Lesesne, [2 Ala. Rep. 359,] an objection was taken that the charge of the Court, though correct, was inapplicable to the case, without a further explanation; but no decision was made upon it; and Sherrod v. Rhodes, (5 Ala. Rep. 683,) turned on the ground that the Court attempted to impose terms, as a condition upon which it would give a particular charge. The judgment was reversed, on the ground that the Court was bound to give or refuse the charge, without imposing terms, though we considered it might properly have refused the charge.

We think it would be extending the rule greatly too far to say, that the omission to charge fully upon the case, was a reason for reversal, when no charge beyond the one given, was asked for. Every charge must be construed with reference to the subject matter, and the cause before the Court. If this just rule is applied here, there is no ground for the objections urged. The plaintiff had declared that he could not recover upon the bills, but went alone on the common counts; and it is apparent that he sought a recovery upon the ground of a contract for contribution. Under these circumstances, the Court undertook to explain in what manner the parties would be liable on the bills, as drawers, endorsers, &c.; but that here there could be no recovery, unless a contract for contribution was made out, or facts and circumstances shown, from which such a contract could be inferred; and afterwards charged that without such, there could be no recovery in this

case. We can see nothing here which was calculated to mislead the jury, by reason of the charge being argumentative or evasive. If, as supposed by the counsel, it is ambiguous, it was the duty of the party to have asked the necessary explanation at the trial. We have already said, that if the evidence set out in the bill is all that was before the jury, in relation to a contract for contribution, that it was clearly insufficient; but there is no doubt of the meaning of the Judge, when he said to the jury, that the parties in the case were liable in the same manner as all other parties to bills of exchange, unless there was some contract for contribution. He did not mean, nor could the jury have so understood him, that they were liable without the necessary means taken to charge them, but he intended to put it upon a ground which they could not mistake, to-wit, that they were liable only, if there was an agreement between *the parties to the bills*, to contribute mutually.

It is also urged, that when a Court undertakes to instruct a jury upon the law governing a cause, it should do so fully, and that its omission is error. We have, in a former part of this opinion, adverted to this matter, and endeavored to shew that when the charge given by the Court does not fully cover the cause, it is the province of the counsel to ask the necessary addition or explanation.

5. In the aspect in which the cause was presented to the jury, the fact that the plaintiff appeared on the bills as their last indorser, was certainly not conclusive, as we have shown in the consideration of another part of the cause; therefore, when the jury was instructed they might give this circumstance such weight in favor of the defendant as they thought proper, no error against him was committed, however objectionable this charge might be, if excepted to by the plaintiff.

6. The amount of the verdict indicates that the defendant has been made liable for one-half of the amount paid by Sherrod, and it is now insisted that the verdict should have been only for one-fourth, assuming Deshler's testimony as establishing the agreement for contribution, and the fact, as established, that the plaintiff and defendant only, of the parties to the bills, are solvent. It is unnecessary to examine whether

this point was decided when this cause was here before, or whether the statute then referred to, [Clay's Dig. 533, § 12,] governs the present case; because, however this may be, no question whatever as to the measure of damages, was made in the Court below, so far as is disclosed by the bill of exceptions. It is true, we may infer that this was the measure acted on by the jury, but if they did so without the instruction of the Court, and were not warranted to do so by the statute, it would be more than questionable if the Circuit Court, on this ground only, would have felt it to be proper to set aside the verdict, inasmuch as the *equitable* right to recover the half would be clear, if the contract between the parties indorsing and drawing the bills, was for mutual contribution, in case of loss.

On the whole, upon the most deliberate consideration, we can perceive no error in the questions reserved, which will warrant a reversal.

Judgment affirmed.

☞ Decided at June term, 1845, and omitted by mistake.