## CHENAULT v. WALKER.

1. A count in an action on the case against a sheriff, for refusing to permit one whose property was attached, to replevy it, is sufficient, if it alledge a tender to the sheriff, of a bond executed by himself with good and sufficient sureties, conforming to the requirements of the statute, and a refusal to accept it.
2. If the bond tendered did not conform to the statute, it was the duty of the sheriff to perfect it, as he is allowed a fee for taking it.
3. One whom the sheriff refused to take as a surety on the bond, may be examined as a witness, and asked what he was worth after payment of his debts. So it is competent to prove by others, acquainted with the condition of the persons offered as sureties, what they were worth at the time they were tendered, after the payment of their debts.
4. It is sufficiently precise to charge the jury, that if the persons refused by the sheriff, " were solvent, and responsible for the penalty of the bond," the sheriff is liable to the party aggrieved.

Writ of Error to the Circuit Court of St. Clair. Before the Hon. G. D. Shortridge.

This was an action on the case, at the suit of the defendant in error, against the defendant below, as sheriff, for refusing to permit the plaintiff to replevy certain slaves, which the former had levied on under an attachment against the estate of the latter. The cause was tried upon the *general issue*, with leave to give any special matter in evidence that could be legally pleaded in bar—a demurrer to each count severally, as well as to the entire declaration being overruled. A verdict was returned in favor of the plaintiff for $250, and judgment was thereon rendered.

From a bill of exceptions sealed at the defendant's instance, it appears that an attachment issued, and was levied on certain slaves of the plaintiff, as alledged in the declaration; that in March, 1844, while these slaves were in the hands of the defendant, as sheriff of St. Clair, under the levy, the plaintiff offered to replevy them by executing a bond,

with Joel Chandler, Elisha R. Chandler, and Caswell Battles as his sureties. These persons were present and willing to become the plaintiff's sureties, but no bond was actually tendered—the defendant refusing to receive a replevy bond of the plaintiff, with the sureties tendered. Defendant however offered to receive such bond from the plaintiff and one Yarborough, or a bond executed by the plaintiff, and any one of three other persons whom he named—all of whom resided in St. Clair county. The defendant objected to the sureties offered by the plaintiff, because he thought them insufficient, and he had been admonished by the plaintiff in attachment to be on his guard, and informed by him that the two Chandlers were not good.

Plaintiff then introduced Elisha R. Chandler, and asked him the following question : "In the spring of 1844, when you offered to go on the replevy bond for plaintiff, as his surety, with Caswell Battles and Joel Chandler, to enable plaintiff to replevy his slaves levied on under the attachment mentioned in plaintiff's declaration, what were you worth, after paying all your just debts." The defendant objected to this question, because it was illegal and improper, and because it called on the witness to state a conclusion, instead of a fact ; but the objection was overruled, and the question answered by the witness, stating that he thought he was worth about twenty-five hundred dollars, after paying his debts. Defendant objected to the answer, but it was permitted to go to the jury.

The same witness stated, that he was acquainted with the circumstances of the other sureties offered, (who had been examined as to their liabilities and property,) and upon being interrogated, said what he thought Joel Chandler was, worth, in March, 1844, after paying his debts. A similar inquiry and statement was made in respect to Caswell Battles, notwithstanding an objection in both instances to questions and answers. Defendant then examined the witness as to his property and liabilities, and of what his estate consisted.

There was no other proof than as above stated, of the of-

fer to replevy the property, but there was other testimony to other points.

The court charged the jury, that if the plaintiff, in the spring ef 1844, offered to execute a replevy bond, with the three persons above named as his sureties, and they were ready and willing to execute such bond, and if the sureties proposed were solvent, and responsible for the penalty of such a bond, and the defendant refused to take it, the plaintiff was entitled to recover, although no bond was in fact executed by the plaintiff, or either of the persons offered as his sureties.

S. F. RICE, for the plaintiff in error. A bond should have been executed and tendered to the sheriff; a mere offer to give a bond, with certain persons as his sureties, is not a compliance with the statute. The sheriff must exercise a judicial discretion in accepting the bond—he must be allowed time to deliberate. It is not enough that the sureties are "solvent and responsible," they must be such as persons of ordinary prudence in the management of their affairs would be willing to accept. The avocations of the sureties, the description of their property are all matters to be considered of by the sheriff, in determining on their sufficiency. It does not appear that either of the persons offered had a fixed residence, or owned lands.

J. T. MORGAN, for the defendant in error. It was the duty of the sheriff to prepare the bond. Clay's Dig. 232. The answers of the witness as to the value of his own property and the other persons offered as sureties were admissible. 2 Phil. Ev. C. & H's Notes, 760; 2 Pick. Rep. 304, 309. On cross-examination the witness stated all the facts, so that the jury could judge what influence to give his testimony.

COLLIER, C. J.—1. It is provided by statute, that attachments may be levied on the defendant's goods and chattels, and that the same shall remain in the custody of the officer seizing them, unless the defendant or his agent shall enter into a replevy bond, with surety in double the amount

20

of the plaintiff's demand, "conditioned that if the defendant
be condemned in the action, he shall return the specific pro-
perty attached, and in case he fail to do so, the securities will
do it for him," &c.   Clay's Dig. 57, § 11; 61 § 33.   "For
taking bonds of every kind," the sheriff is entitled to a fee of
*fifty cents.*   Id. 234, 235.

The first count of the declaration alledges that the plain-
tiff tendered to the defendant a bond executed by himself,
with good and sufficient sureties, conforming to the require-
ments of the statute ; and the second avers an offer to exe-
cute such a bond.   Both alledge the refusal of the defendant,
as sheriff, to accept a bond with the sureties proposed.   It is
quite enough to state the substance of these counts, to show
that they are good, at least on general demurrer.   In respect
to the second, if it was supposed that the plaintiff should not
merely have offered to replevy, but should have tendered a
bond in all respects perfect, we would answer, that the law
in giving to the sheriff a fee for taking such a bond, imposes
on him the duty of preparing it,   But if it were incumbent
on the defendant in such case to tender a complete bond, he
would be excused from it, by the refusal in advance to accept
it, provided the sureties proposed were sufficient.

2. The inquiry of Elisha R. Chandler, what he was worth
when he proposed to execute the replevy bond with the
plaintiff, we think was altogether unobjectionable.   It can-
not be admitted as a general rule, that a witness shall not be
allowed to state a *conclusion of fact,* without first disclosing
all the facts and circumstances of which the conclusion in
his own mind is predicated.   The opposite party may, so
far as they are pertinent and proper, elicit them by a cross-
examination.   In Lawson v. Orear, 7 Ala. R. 784, it was
said that reputation was not admissible to prove insolvency,
as that is the *legal conclusion* from facts to be stated ; but
reputation of facts or circumstances from which insolvency
may be inferred, is proper evidence to go to to the jury.   In
Massey v. Walker, 10 Ala. 288, it was objected, that a wit-
ness should not have been allowed to state that a party "was
largely embarrassed by debts," because this was a statement
of conclusions, not of facts.   To this it was answered, that
"from the course this notion of *conclusions* as distinguished

from *facts*, seems to be taking, it is as well to state that the decisions upon this point refer to conclusions of law, to be deduced from facts which may or may not exist. There is no matter which involves a combination of facts that is not liable to be called a conclusion, if this term is properly applied to the knowledge by one individual that another is embarrassed with debt." 2 Pick. R. 304; 3 N. Hamp. R. 349; 6 Id. 462; 3 Dana's Rep. 301; 11 Serg. & R. 137.

3. What is said on the preceding point, and especially in the case cited from 10 Ala. Rep., is decisive to show, that the circuit court did not err in permitting E. R. Chandler to testify that he was acquainted with the situation of the persons offered as his co-sureties, and what he believed they were respectively worth.

4. The remaining question arises upon the charge of the court. By the terms "solvent and responsible," we must understand, it was meant, that the sureties proposed were capable and able to discharge the obligation to be contracted; in other words, that they were good for the *penalty of the bond*. There is no law which makes it indispensable that such sureties should be the proprietors of land; it is enough if they own other property which is tangible and available for the payment of debts. Upon this being shown, it devolves on the party controverting their sufficiency, if the fact be so, to show that they have no fixed residence—are men of uncertain and dubious pursuits, or are not (from any cause) such persons as men of prudence would trust. It is not shown that such proof was adduced, and it cannot be assumed that such was the character of the sureties offered.

It may be that the charge is somewhat ambiguous, and might have been more precise in its import, yet we cannot affirm, from the proof recited in the bill˜of exceptions, that the jury were necessarily misled. We have repeatedly held that a judgment will not be reversed merely because a charge is ambiguous, or too general; if the party who supposes that he may be prejudiced, desires more specific instructions, he should pray the court to give them. If he suffers such an

opportunity to pass, without an effort to repair what he con-siders injurious to himself, he cannot be heard on error to alledge that the charge was not sufficiently pointed, or was too general.

It follows that the judgment must be affirmed.

CHILTON, J., not sitting.