## TOMPKINS vs. THE STATE.

[INDICTMENT FOR LARCENY FROM STOREHOUSE.]

1. *Charge on sufficiency of circumstantial evidence.*—A charge to the jury in a criminal case, where the evidence against the accused is entirely circumstantial, "that they are bound to acquit the defendant if there is a single link wanting in the chain of circumstantial evidence," is calculated to confuse or mislead the jury, and, for that reason, should be refused.

APPEAL from the Circuit Court of Pike.

Tried before the Hon. JOHN GILL SHORTER.

THE prisoner in this case was indicted for the larceny of a pair of shoes, alleged to have been the personal property of one Archibald T. Lockard, and to have been stolen from a storehouse. The evidence adduced on the trial, and the rulings of the court, are thus stated in the bill of exceptions:

"On the trial of this case, the State introduced a witness who was the clerk of one Lockard, a merchant in the town of Troy in said county, and who testified, that the prisoner came into the storehouse of said Lockard, in January or February, 1858, with a pair of shoes in his hands, which he said his son had purchased at that store with money that he had given him, and which he wished witness to exchange for a smaller pair; that witness told him he had not sold them to his son, and asked him who let his son have them; that the prisoner replied, if his son

37

did not get them from witness, he reckoned he got them from Lockard or Weiss, (said Weiss, it was proved, having formerly owned the store, but having sold out to Lockard before January, 1858;) that witness asked him, what his son paid for the shoes; that the prisoner replied, he paid the price marked on the bottom of them; that witness then examined the shoes, and saw on the bottom of them Lockard's private mark, in letters, indicating the cost of the shoes, and the retail price in figures; that the marked retail price was $1 60, and witness told him so; that the prisoner replied, that was the price paid for them; that witness then took the shoes, and made examination for a smaller pair; that he could not find a smaller pair, and so informed the prisoner, who thereupon demanded back the money; that witness thereupon paid him $1 60 in money, and the prisoner left the store. The witness exhibited the shoes which he received from the prisoner, which were of the size No. 6; and further testified, that the prisoner's son was about nine or ten years old, and that No. 3 or 4 was the size of shoes to fit him; that he never sold said shoes to the prisoner's son, nor saw any one else do so; that he never sold a pair of shoes for said Lockard, without punching holes in the vamps, or side flaps, putting strings in them, and rasping out the pegs on the inside. The shoes produced had no holes in them, nor strings attached, and had pegs sticking up on the inside. The prisoner objected to this last statement of the witness; his objection was overruled, and he excepted. Said witness further testified, that Lockard, his employer, was absent from Troy at the time the prisoner brought said shoes into the store, on a trip to Mobile, whence he returned a few days afterwards; and that on his return witness communicated to him what had occurred between him and the prisoner.

"The State then introduced Lockard as a witness, who swore that he bought out the store from one Weiss in the latter part of 1857, and went into possession, and continued the business in the same house, with the old stock of goods, together with additions which he made to it; that the shoes exhibited were from a lot bought by him in

Montgomery in January, 1858, and were unlike any bought from Weiss; that on his return from Mobilê, being advised by his clerk of the acts of the prisoner, he met with the prisoner a few days afterwards, and told him what he had heard, and that he had not sold the shoes to his son; that the prisoner then said, that he (the prisoner) had bought them from Lockard, or perhaps from Weiss; that witness replied, it was not so; that the prisoner was agitated during this interview, and appeared uneasy; also, that he did not sell the shoes to the prisoner, nor to the prisoner's son; that he punched holes in all the shoes which he sold, and put strings in them, and rasped out the pegs. To this last statement of the witness the prisoner objected; his objection was overruled, and he excepted.

"The State then introduced said Weiss as a witness, who testified, that he sold his store to Lockard in December, 1857; that he kept his books and papers in Lockard's counting-room, by Lockard's permission, to wind up and settle his old business; that he had nothing to do with the store, or the selling of Lockard's goods, and had not sold anything for Lockard, within his recollection, except on one occasion a small quantity of indigo; and that he did not sell the said shoes to the prisoner, nor to the prisoner's son. Said witness was asked, on cross examination, if he might not be mistaken in saying that he never sold anything for Lockard except some indigo, and if he did not sell some saltpetre to one Whatley in January; to which he replied, that he did not think he was mistaken—that he did not sell the saltpetre to Whatley, that he had no interest in the store, and never meddled with the sales, except that he happened to sell the indigo as stated. It was proved, also, that Lockard's store was under the same roof with the rooms occupied as a post-office in the town of Troy, and was separated from the post-office apartment by a partition running lengthwise between them; that a door communicated between the store and the back room of the post-office; that the shoes like those in question were piled up near this door, on a shelf which extended from the front of the store down to

this door, and on the left of the door; that there was a back*room to the post-office, reached through a door leading from the office into it, and another door leading from said back room out of the house in the rear; that the prisoner, on a certain day shortly before he carried the shoes into Lockard's store, as above stated, had been left temporarily in charge of the post-office, while the postmaster had gone out into town on some matter of business; and that when the postmaster returned, the prisoner retired from the post-office through the door leading into the back room, closed the door, and was not seen to return. The State then proved the value of the shoes, and closed.

".The prisoner then proved, by Lockard and his clerk, that other shoes, precisely like the pair in question in size, marks, numbers and quality, and embraced in the same assortment purchased by Lockard in Montgomery, had been sold in January and February; that they could not undertake to say that those identical shoes had not been sold to some person, and that they had not been missed from the store. Lockard said, also, that he had no saltpetre for sale in his store in January or February. The prisoner then introduced one Whatley as a witness, who testified, that he went into said Lockard's store in January, to buy some saltpetre, and asked Lockard for it; that Lockard said he had none; that Weiss, who was present, said 'Yes, you have,' and went to the end of the counter where it was, and wrapped it up, and delivered it to witness; that he went to said store on this occasion, because he had sold some saltpetre to Weiss before the latter sold out to Lockard; that Lockard was in the lower part of the store when he called for the saltpetre; that his recollection was distinct as to his buying the salt-petre from Weiss, and not from Lockard; and that he well knew what he was about, although he had taken nine or ten drinks during the day. Lockard and Weiss were then re-examined by the State, and stated, that they recollected the occasion spoken of by Whatley; and that the saltpetre was sold to him by Lockard, and not by Weiss.

"This was, in substance, all the evidence in the case; and thereupon the prisoner asked the court to charge the jury as follows:

"1. That in determining the credibility of the witnesses Lockard and Whatley, the jury must look to the fact that Lockard said he had no saltpetre, and that Weiss stated that he had. This charge the court gave, but added, 'and also to the fact that Whatley had been drinking before he went to the store, if such was the case;' to which qualification of the charge the prisoner excepted.

"2. That if there is a single link wanting in the chain of circumstantial evidence, the jury are bound to acquit the defendant;" which charge the court refused to give, and the prisoner excepted.

PUGH & BULLOCK, for the prisoner.

M. A. BALDWIN, Attorney-General, *contra*.

STONE, J.—Most criminal offenses are made up of two or more facts, which are in their nature distinguishable. In this case, the offense consists of at least two facts: 1st, the theft; and, 2d, the agent by which the crime was committed. To justify a conviction, it was essential that each of these facts should have been proved. Further, if the defendant, on the testimony in this record, had asked the court to instruct the jury, that they could not convict, if the proof failed to establish one or more of the constituent facts, naming such constituent fact or facts, and the court had refused to give the instruction, such refusal would probably work a reversal of the case.—Wharton's Amer. Crim. Law, §§ 743, 745; Burrill on Circumstantial Evidence, 734.

We have found no rule of law, which declares that circumstantial evidence necessarily consists of links; or, which prescribes any definite number of circumstances, as necessary to the sufficiency of circumstantial proof. There may be, and are, cases where a single circumstance will justify the jury in finding the existence of an inferential fact. Unexplained possession of an article recently stolen, is of this class; and from this single circumstance,

the jury may, and frequently do, draw the inference that the party thus found in possession is the thief. Circumstances, however, may be admissible in evidence, which are much less determinate and satisfactory. The weight of pertinent circumstances, their influence on the minds of the jury, can rarely become a question of law, although there are certain rules for weighing them, which the court should not hesitate to give.

Coming to the conclusion that circumstantial evidence is not necessarily a chain, or composed of links, we think the tendency of the charge asked was to mislead or embarrass the jury, and that it was rightly refused.—Sherrod v. Rhodes, 5 Ala. 683; Rhodes v. Sherrod, 9 Ala. 63, 71; Blocker v. Burruss, 2 Ala. 354; Caskey v. Haviland, 13 Ala. 314; Chenault v. Walker, 14 Ala. 151; Godbold v. Blair & Co., 27 Ala. 592; Rolston v. Langdon, 26 Ala. 660; Swallow v. The State, 22 Ala. 20; Ross v. Ross, 20 Ala. R. 105; United States v. Johns, 1 Wash. C. C. 372; 2 Halsted's Evidence, 485-6-7; Roscoe's Criminal Evidence, 1.

In what we have said above, we do not wish to be understood as trenching on the rule as to the measure of proof in criminal cases, or in the establishment of circumstances by which the jury should be controlled. The charge refused in this case did not raise either of these questions.—Ogletree v. The State, 28 Ala. 693; Sumner v. The State, 5 Blackf. 579.

The other rulings of the circuit court are free from error.

The judgment is affirmed, and the sentence ordered to be executed.