# Roberts and Williams *v.* The State.

*Indictment for Grand Larceny.*

1. *Larceny; corpus delicti, how proved.*—It is not indispensably necessary to establish the *corpus delicti* in larceny, where there is no direct proof of the felonious taking of goods, found in the recent and unexplained possession of defendants, and forming part of a stock of merchandise, which might have been disposed of in due course of business by the proprietor of the store or any one of several of his clerks, that all those having authority to dispose of the goods should be called and testify severally, that they had not disposed of them.

[Roberts and Williams v. The State.]

2. *Same.*—In such a case, the testimony of the clerks introduced as witnesses, and suspicious circumstances connected with the possession, may authorize the jury to find that the goods were stolen; though until that fact is found, the defendants are not called on to explain their possession.

3. *Charge; what misleading, and properly refused.*—A charge in such a case, which is so worded, as to lead the jury to infer that it was the duty of the prosecution to make positive proof, that neither the proprietor nor his clerks sold the goods, before the defendants could be convicted, is misleading, and properly refused on that account.

APPEAL from Montgomery City Court.

Tried before Hon. JOHN A. MINNIS.

The appellants, Prudy Roberts and Mahala Williams, were convicted of grand larceny, for the felonious taking and carrying away of "32 yards of blue silk, 30 yards of black silk, 78 yards of black silk, 40 yards of blue silk strip, 13 yards of blue and gold boeretts, of the value of more than two hundred dollars, the personal property of M. P. LeGrand, against the peace," &c.

M. P. LeGrand was a merchant engaged in the dry goods business, and had had among his stock of goods such articles as were described in the indictment, and exhibited in court, after it was shown that these articles had been taken from persons to whom the defendants had delivered them. The loss of the goods was not discovered by those in charge of the store, until they were interrogated about it by the police, after the police discovered the goods, which were taken within twelve months before the finding of the indictment. One Warner was examined in behalf of the State, and testified that he was in charge of the department in which the silks were kept for sale; that he did not sell them or know of their having been sold; that all goods sold or disposed of in the store were promptly accounted for on the books; that he had examined the books and there was no entry or memorandum showing that the goods described in the indictment, produced in court, had been sold or otherwise disposed of; that there were as many as twelve other clerks in the store; that each of them sold goods in different departments of the store as occasion demanded; that they all had access to the goods and authority to sell them; that he was sometimes absent from the store every day while at meals, and was sometimes absent on business; that at such times others had access to the goods; that in addition to the clerks in the store there were two porters and the proprietor; that he recognized a paper which was shown him, [which it was proved had been in the possession of one of the defendants]; that it was an original stock paper, in which there was a piece of silk

exactly corresponding with the piece exhibited in court; that there was exactly the same number of yards and the color and goods were the same precisely as that shown him; that the mark on the paper was the mark of LeGrand; that he did not know how or when the paper got from the store, and did not know that the paper or silks were stolen from the store, but that he did not sell them or know of any one else having done so.

One Goode, another clerk in the store, testified that he saw Mahala Williams, one of the defendants, in the store two or three days before the goods were missed; that she was sitting at the counter in the department where the silks were kept, and he made a boy watch her, but she was not seen to do anything while there.

Another witness, one Pebworth, testified that the defendants in the latter part of the last year brought some of the silks to her which were exhibited in court. Defendants said there were fifty yards of it, and wanted it made into dresses. Mrs. Pebworth surrendered this silk to a policeman.

The State then introduced one Martin, a member of the police force, who testified that he knew the defendants; that without any threats or inducements held out by him, "Mahala Williams told him that a man sent her one of the pieces of silk from New Orleans; afterwards she said a man from North Alabama sent it to her, she also said that Prudy Roberts gave her some of the silk." The court cautioned the jury that this last statement was not evidence against Prudy Roberts. Another policeman, Payne, testified that he searched for the silks and found the paper referred to in the testimony of the witness Warner; that he found both at Mrs Pebworth's house, and he identified the silk exhibited in court as that which he found at Mrs. Pebworth's.

The State also introduced two other witnesses, who testified to having bought from the defendant Mahala Williams, pieces of silk which were exhibited in court, and which had been delivered to the police.

The defendants introduced no witnesses; and none of the clerks in the store, or the proprietor thereof, were examined, except Warner and Goode.

The foregoing was substantially all the evidence. The court, at the request of the defendants, gave several written charges, but refused the following charge requested in writing: " If the jury believe from the evidence, that there were as many as ten other persons in the store, beside the witness, who had access to all the goods of LeGrand, and who were

authorized to sell them, at the time the larceny is said to have been committed, and if the evidence fails to show that neither of these persons sold or disposed of the goods mentioned in the indictment, if they believe they were the property of LeGrand, then they should find the defendants not guilty." The court refused this charge; defendants excepted, and now assign its refusal as error.

J. M. FALKNER, for appellants.—Recent possession of stolen property alone, can not be invoked to prove the *corpus delicti*.—*Fuller v. State*, 48 Ala. 273; Wharton's American Crim. Law, § 745; Bur. on Cir. Evidence, pages 728–9 and 734, and rules; *Chisholm v. The State*, 45 Ala. 67.

Until the evidence showed clearly that there was a felonious taking, no presumption could operate against defendants by reason of their unexplained possession of the goods. Appellants contend that, in the absence of testimony showing that neither LeGrand nor any of his clerks sold or otherwise disposed of the goods, or other testimony tending to show a taking of the goods against the consent of the owner, or that there was no consent to the taking, or parting with the goods by the owner, or any one authorized to represent him—there is wanting that fullness and completeness of proof necessary to establish the truth of the allegation, that a larceny had been committed.

This question was not for the jury to pass upon alone. If the proof failed to show the criminal act, it was the duty of the court to interpose; as in a case where the *corpus delicti* is attempted to be shown alone by the confessions of the defendant—which might be ever so satisfactory to the jury, yet the court would be bound to instruct, that the confessions were insufficient.

The charge asked, and refused, ought to have been given. The effect of its refusal, was to authorize a conviction without proof of the *corpus delicti*.

H. C. TOMPKINS, Attorney-General, *contra*.—The proper question for the consideration of the jury was: had defendants feloniously taken and carried away the goods alleged to have been stolen. Proof that the goods had been the property of LeGrand; that they were found in the possession of persons who claimed to have gotten them from the defendants; that the defendants admitted that they had been in their possession, and made contradictory statements as to how they obtained such possession, was proof sufficient to

authorize the jury to convict. The charge asked, would require the jury to acquit in the absence of positive evidence showing that the other persons in the employment of LeGrand had not sold the goods. Whether so intended or not, the effect of the charge was to draw the minds of the jury off from the issue. It is true that if the articles had been sold, the defendants could not have been convicted, but the effect of the charge would have been to impress the minds of the jury with the idea that in the absence of positive proof on this question, they must acquit, while in fact the circumstances pointing to their felonious acquisition by the defendants might have been so strong as to satisfy the jury that the goods were stolen. If defendants had purchased the silks they could easily have shown it. In none of their statements explanatory of their possession, did they pretend to have acquired such possession by any purchase of the clerks mentioned in the charge; yet the court is asked to instruct the jury, that the failure of the State to prove that that was not done, which if it had been done, would have been utterly inconsistent with the statements made by defendants themselves, would authorize the jury to acquit. Under the facts of this case, the charge should have been refused. As to what is sufficient proof of the *corpus delicti* in such a case, see *Reg v. Burton* and *Reg v. Mockford*, Fisher's Digest Crim. Law, pages 250, 251.

STONE, J.—To justify a conviction in this case, it was essential that the jury should have been convinced beyond a reasonable doubt that the goods alleged to have been stolen had been feloniously taken and carried away. This necessarily implies that they had not been sold by any person authorized to sell them; and, of this negative fact, the jury must inquire, before the principle could be invoked or applied, that goods recently stolen, found in the possession of the accused, casts on him the duty of explaining how they came into his possession. But, as we have said, this is a negative fact, and it is usually difficult to make direct proof of a negative. In criminal prosecutions, almost or quite any material fact may be proven by circumstances, if sufficiently pertinent and connected. And when so pertinent and connected, they may produce conviction quite as strong and satisfactory, as the positive testimony of witnesses.

In the present case there were many circumstances calculated to throw distrust over the possession of the defendants. These it was the duty of the jury to scan narrowly. If the

prisoners came by the goods by honest purchase, this fact was more easily susceptible of proof by them, than was its negative by the prosecution.   All the circumstances tending to throw distrust over the possession of defendants, tended to prove the goods had been stolen.   We do not think the testimony on this point was so weak, that it should not have been submitted to the jury; nor do we think it was necessary, as a legal proposition, that the prosecution should have introduced all the clerks in the store, and proved by them severally, that they did not sell the silks.   Had this been done, it certainly would have made a more clearly convincing case for the State; and a failure to do so would probably be commented on by counsel in defense.   It did not require the court to take the case from the jury, or to instruct them to acquit.   The pith of the charge asked and refused is, that "if the evidence fails to show that neither of said persons— [the proprietor and clerks—]sold or disposed of the goods mentioned in the indictment, . . then they, [the jury,] should find the defendants not guilty."   This charge, if given without explanation, would convey the impression to the common mind that it was the duty of the prosecution to make positive proof that neither of said persons had sold or disposed of the goods.   This would have misled the jury, and under all our rulings, the City Court was justified in refusing it.—*Tomkins v. The State*, 32 Ala. 569; *Harrington v. The State*, 36 Ala. 236; *McWilliams v. Rodgers*, 56 Ala. 87; Clark's Manual of Cr. Law, § 995.

Judgment of the City Court affirmed.